836 So.2d 207 (2002)
Warren W. HOAG, Jr., et als.
v.
STATE of Louisiana, Through Its Treasurer, John Neely KENNEDY.
No. 2001 CA 1076.
Court of Appeal of Louisiana, First Circuit.
November 20, 2002.
Writ Denied March 28, 2003.
*210 Jon E. Boustany, Elkridge, MD, Counsel for Warren W. Hoag, Jr., Past Coroner, Parish of Jefferson, et als.
Thomas L. Enright, Jr., Baton Rouge, Counsel for State of Louisiana.
Before: CARTER, C.J., FOIL, FOGG, PARRO, FITZSIMMONS, KUHN, GUIDRY, PETTIGREW, DOWNING, LANIER,[1] and PATTERSON,[2] JJ.[3]
LANIER, J.
This action is a suit by thirty-five (35) coroners against the State of Louisiana (State) through its Treasurer seeking past due and future extra compensation allegedly owed them pursuant to the provisions of La. R.S. 33:1559.[4] The State filed a peremptory exception raising the objection of no cause of action asserting the following:

LSA-R.S. 33:1559 provides that the State shall pay a monthly, supplementary amount of five hundred and forty-eight dollars ($548.00) to each Louisiana coroner payable from funds specifically appropriated by the legislature. No such funds have been appropriated by the legislature for the period of time Plaintiffs allege the State has failed to pay this additional compensation. Moreover, La. Const. Art. III, Sect. 16 and Art. VII, Sect. 10 specifically prohibit the withdrawal of any money from the State Treasury except through specific appropriation. Accordingly, Plaintiffs have no cause of action against Exceptors and their suit should be dismissed.
III.

La. Const. Article 5, Section 29 provides generally that each Parish shall have an elected coroner with a term of four years, and provides for the qualifications of such coroner. La. Const. Article 10, Section 23 provides that the compensation of an elected public official *211 shall not be reduced during the term for which he is elected. Exceptors maintain that the individual Plaintiff Coroners have each been elected to a new term without being paid this supplemental compensation during that new term; thus, their salaries have not been reduced during the term sued for in the instant lawsuit. Accordingly, Plaintiffs have no cause of action against Exceptors and their lawsuit should be dismissed.
The trial court overruled the exception. The coroners then filed a motion for summary judgment. The State filed a peremptory exception raising the objection of the three-year liberative prescription provided for in La. C.C. art. 3494(1).[5] After hearings on the motion and exception, the trial court granted the coroners' summary judgment and overruled in part and sustained in part the exception of the State in a judgment that provided, in pertinent part, as follows:
ORDERED, ADJUDGED AND DECREED LSA-R.S. 33:1559 places a mandatory obligation upon the State of Louisiana to pay the supplemental pay due to the Plaintiffs under said statute and to appropriate the funds to pay such supplemental pay; and
FURTHER ORDERED, ADJUDGED AND DECREED, that the Plaintiff's Motion for Summary Judgment is hereby granted and that the Defendant's Exception of Prescription is granted in part with respect to that portion of the Plaintiffs' claims that are older than three (3) years from the filing of the original Petition in this matter .... (Emphasis added.)
The judgment also awarded each coroner the specific amount due him or her. The total of these sums is $805,015.00.
The State took this suspensive appeal. The coroners did not appeal or answer the appeal.

FACTS[6]
The present language of La. R.S. 33:1559 was enacted in Acts 1984, No. 570. *212 Extra compensation for coroners paid by the State was first provided for in Acts 1978, No. 104 (La. R.S. 33:1558.1).
Commencing with the 1978-1979 fiscal year, the State paid the extra compensation for coroners with appropriated funds as provided for in La. R.S. 33:1558.1. Commencing with the 1986-1987 fiscal year, the legislature failed and/or refused to appropriate funds for the extra compensation.
On September 27, 1995, sixty-eight past and present coroners filed suit against the State for past-due extra compensation from July 1, 1986, until the date of the filing of the suit. The suit was filed in the 19th Judicial District Court, Parish of East Baton Rouge, under docket number 420,821 and was entitled Dr. Mark H. Dawson v. State of Louisiana, through its Treasurer. The case was tried on a stipulation of facts on May 13, 1996. On June 6, 1996, judgment was rendered in favor of the coroners and against the State for a total of $3,186,833.20. The judgment also provided as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the failure of the Defendants to pay Plaintiffs pursuant to La. R.S. 33:1559 and the Defendants' failure to appropriate extra compensation due Plaintiffs is hereby declared to be unconstitutional and violates the Louisiana Constitution of 1974 in that it impairs the functions of the office of coroner as stipulated by State law and impinges upon the separation of powers provided in the Constitution of 1974; and
IT IS DECREED that the failure to appropriate funds is unconstitutional since it reduces the pay of elected public officials during their term of office contrary to the Louisiana Constitution of 1974 ....
The State did not appeal this judgment and it is now res judicata. La. R.S. 13:4231. The State paid this judgment by an appropriation in Acts 1996, No. 6, § 6.
This suit was filed on April 19, 2000. The judgment granted in favor of the coroners described in the introductory paragraph of this opinion was signed on April 19, 2001. The State took this appeal on May 2, 2001.
Senate Bill No. 154 (Bill 154) pertaining to the extra compensation for coroners in La. R.S. 33:1559 was introduced at the 2001 Regular Session of the Louisiana Legislature. The title of Bill 154 provided as follows:
To amend and reenact R.S. 33:1559(A) and (B), relative to the compensation of coroners; to permit rather than require the state to provide supplemental compensation to coroners; and to provide for related matters. (Emphasis added.)
The Digest accompanying Bill 154 provided as follows:

Present law provides that the state shall pay $548.00 per month in extra compensation to any coroner who is paid a salary or a salary and fees.

*213 Present law further provides that the state shall also pay $548.00 per month to any coroner who is paid only fees and who may be paid an additional $500.00 by the local governing authority.

Proposed law permits rather than requires the state to pay the extra compensation to coroners and provides that such compensation be paid from funds appropriated by the legislature, if such an appropriation is made.

Proposed law retains all other provision of present law. (Italics added.)
The Fiscal Note attached to Bill 154 states in three places that the bill "permits, rather than requires the state to pay extra compensation to coroners ". (Emphasis added.) Bill 154 provided for the following amendments to La. R.S. 33:1559:(1) substitutes may for shall in La. R.S. 33:1559A(1); (2) substitutes may for shall in La. R.S. 33:1559A(2); (3) substitutes which may be paid for payable in La. R.S. 33:1559B; and (4) deletes the period at the end of La. R.S. 33:1559B and adds if such an appropriation is made.[7] Bill 154 was adopted on May 9, 2001, by the Senate by a vote of 37-0; it was adopted on June 11, 2001, by the House of Representatives by a vote of 101-1. The Governor vetoed the bill on July 5, 2001.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966B; Calhoun v. Hoffman-La Roche, Inc., 98-2770, p. 4 (La.App. 1 Cir. 2/18/00), 768 So.2d 57, 60-61, writ denied, XXXX-XXXX (La.6/23/00), 765 So.2d 1041. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action; it is favored and shall be construed to accomplish these ends. See La. C.C.P. art. 966A(2). After adequate discovery, or after a case is set for trial, a motion that shows there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law, shall be granted. La. C.C.P. art. 966C(1). The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966C(2).
Appellate courts review summary judgments de novo. Robertson v. Northshore Reg'l Med. Ctr., 97-2068, p. 5 (La.App. 1 Cir. 9/25/98), 723 So.2d 460, 463.
When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleadings; his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La. C.C.P. art. 967; Burris v. Vinet, *214 95-0668, p. 4 (La.App. 1 Cir. 11/9/95), 664 So.2d 1225, 1228.

THE CORONER
The office of coroner is provided for in Article V (The Judicial Branch), § 29 (Coroners) of the Louisiana Constitution of 1974 as follows:
In each parish a coroner shall be elected for a term of four years. He shall be a licensed physician and possess the other qualifications and perform the duties provided by law. The requirement that he be a licensed physician shall be inapplicable in any parish in which no licensed physician will accept the office.
The office of coroner has been provided for in Louisiana constitutions since 1845. Mullins v. State, 387 So.2d 1151, 1152 (La.1980). The legislature has provided for coroners in La. R.S. 33:1551 et seq. and La.C.Cr.P. art. 101 et seq. A review of these statutes shows that the duties imposed on coroners are extensive, involve technical matters and require professional medical training to perform. Pursuant to La. R.S. 33:1551A, a coroner "shall be elected at the gubernatorial election, shall serve for a term of four years, and shall take office and begin his term on the fourth Monday in March following election." Thus, for purposes of this case, the coroners elected in 1995 took office on March 25, 1996, and those who were elected or re-elected in 1999 took office on March 27, 2000.
A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. C.C. art.1906. An obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing something. La. C.C. art. 1756. Thus, it would appear that the legal relationship between the State and a coroner is a contract. The coroner enters into this legal relationship with the State through the election process. When he or she is sworn into office, he or she obligates himself or herself to perform the duties (obligations) required by the State's law. La. Const. of 1974, art. X, § 30. In return, the legislative branch has obligated the State and parish governing authorities to provide compensation for each coroner for performing these duties pursuant to the provisions of La. R.S. 33:1556 and 33:1559. (A parish governing authority is the body that exercises the legislative functions of the parish. La. Const. of 1974, art. VI, § 44(4).)
Because the office of coroner is a constitutional office provided for in the judicial branch of State government, the person occupying the office acts in the name, and on behalf, of the State when performing his or her duties. Thus, the legal relationship between a coroner and the State is a contract of onerous mandate. (It should be noted that the noun agent is a common law word whose Louisiana civil law equivalent is mandatary.) A mandate is a nominate contract "by which one person gives power to another to transact for him and in his name, one or several affairs." La. C.C. art. 2985.[8] The parties to a contract of mandate are the principal and the mandatary. La. C.C. arts. 2987 and 2988. See also La. R.S. 42:1441.4. Cf. Rowell v. Carter Mobile Homes, Inc., 500 So.2d 748, 751 (La.1987); Blanchard v. Ogima, 253 La. 34, 215 So.2d *215 902, 903-908 (1968).[9] Pursuant to La. C.C. art. 3012 (previously La. C.C. art. 3022), "(t)he principal is bound ... to pay him [the mandatary] the remuneration to which he is entitled." The remuneration at issue in this case is the extra compensation to be paid by the State provided for in La. R.S. 33:1559.

OBLIGATION OF THE STATE TO PAY EXTRA COMPENSATION TO CORONERS

(State's Assignments of Error Nos. 1 and 2)
The State asserts "(t)he Trial Court erred, as a matter of law, in holding that LSAR.S. 33:1559 imposes a mandatory obligation upon the State of Louisiana to pay the supplemental pay due to the Plaintiffs under the statute ...." Essentially, the State asserts in brief that the phrase "from funds appropriated by the legislature for this purpose" in La. R.S. 33:1559 renders the obligation to pay discretionary and dependent on a legislative appropriation. The State also asserts the trial court "erred, as a matter of law, by ignoring the controlling precedent contained in Redwine v. State of Louisiana ...."

The Statute
Louisiana Revised Statute 33:1559 presently provides as follows:
Extra compensation for coroners
A. (1) Any coroner who is paid a salary or a salary and fees under the provisions of this Part, in addition, shall be paid five hundred forty-eight dollars per month by the state.
(2) Any coroner who is paid only fees under the provisions of this Part shall be paid five hundred forty-eight dollars per month by the state and may be paid an additional five hundred dollars per month by the parish governing authority.
B. The extra compensation for coroners payable by the state provided for in Subsection A of this Section shall be payable monthly by the state treasurer on the warrant of the coroners from funds appropriated by the legislature for this purpose.
C. The extra compensation for coroners which may be paid by the parish governing authority provided for in Subsection A of this Section shall be payable monthly by the parish governing authority on the warrant of the coroner. The funds for the parish portion of the extra compensation shall be carried as an item in the parish governing authority's annual budget.

Statutory and Jurisprudential Rules for Interpreting La. R.S. 33:1559
Statutory interpretation is the province of the judicial branch of State government. See, e.g., Lasyone v. Phares, 01-1785, pp. 4-5 (La.App. 1 Cir. 5/22/02), 818 So.2d 1068, 1071. The legislative and judicial branches have adopted rules for interpreting the Revised Statutes, the Civil Code and other laws.
*216 Special rules for interpreting a revised statute have been enacted by the legislative branch and are found in La. R.S. 1:1 et seq. Louisiana Revised Statute 1:3 provides as follows:
Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
The word "shall" is mandatory and the word "may" is permissive.
Louisiana Revised Statute 1:4 provides as follows:
When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.
Louisiana Civil Code articles providing for the interpretation of laws are found at La. C.C. art. 9 et seq. See, in particular, La. C.C. arts. 9 and 11. Louisiana Civil Code art. 13 provides as follows:
Laws on the same subject matter must be interpreted in reference to each other.
The following jurisprudential rules for interpreting laws found in Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1 Cir.1984) are applicable:
When a law or ordinance is clear and free from all ambiguity, it must be given effect as written.
When interpreting a law (ordinance), the court should give it the meaning the lawmaker intended. It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the law and will carry out the intention of the law maker.
When the expressions of a law are "dubious", the most effectual way of discovering the true meaning of the law is to consider the reason and spirit of it, or the cause which induced the lawmaker to enact it. When a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is to be preferred over one which renders part thereof ridiculous or nugatory. If there is an irreconcilable conflict between the provisions of a law, only one provision can prevail. (Citations omitted; Emphasis added.)

Legislative History
All acts of the legislature must have titles indicative of their object. La. *217 Const. of 1974, art. III, § 15A. Thus, the title and preamble to a statute properly may be consulted to determine legislative intent. Boutte v. Jefferson Parish Hosp. Serv. Dist. No. 1, 99-2402, p. 5 (La.4/11/00), 759 So.2d 45, 49. The legislative history of a statute and related legislation provides a particularly helpful guide in ascertaining the intent of a statute. Theriot v. Midland Risk Ins. Co., 95-2895, pp. 3-4 (La.5/20/97), 694 So.2d 184, 186.
Acts 1978, No. 104 enacting La. R.S. 33:1558.1 commenced its legislative voyage as House Bill 460. Representative Raymond LaBorde, one of the authors of the bill, testified before the Senate Finance Committee on May 22, 1978, that this bill was intended to provide "that in addition to the salaries and/or fees paid to coroners, each coroner in this state shall be paid $1,000 per month payable in equal portions by the state and by the respective parish." (Emphasis added.) At this same committee meeting, Dr. F.P. Bordelon, Jr. of the Louisiana Coroner's Association "explained that this amount would help to keep the M.D.'s in the coroners offices." Paragraphs A, B and D of La. R.S. 33:1558.1 provided as follows:
A. Any coroner who is paid a salary or a salary and fees under the provisions of this Part, in addition, shall be paid five hundred dollars per month which shall be payable by the state. Any coroner who is paid only fees under the provisions of this Part shall be paid five hundred dollars per month which shall be payable by the state and may be paid an additional five hundred dollars per month by the parish governing authority.
B. The extra compensation for coroners payable by the state provided for in Subsection A of this Section shall be payable monthly by the state treasurer upon the warrant of the coroners from funds appropriated by the legislature for said purpose.

. . . .
D. Notwithstanding any provisions of the preceding paragraphs of this Section, the Coroner of any parish who receives compensation in excess of twenty-five thousand dollars per annum shall not be eligible for the additional compensation provided by this Section. (Emphasis added.)
Pursuant to Acts 1980, No. 634, La. R.S. 33:1558.1A was amended to increase the monthly extra compensation paid to coroners by the state and the parish to $548.00 each. This increase in compensation is consistent with the policy of this statute to induce medical doctors to become or remain coroners. Obviously, the legislature, at this time, determined that encouraging medical doctors, rather than non-medical persons, to become coroners was a policy beneficial to the public.
Pursuant to Acts 1981, No. 678, La. R.S. 33:1558.1D was amended to increase the salary ceiling on coroners eligible to receive extra compensation from $25,000.00 to $27,000.00. This legislative action is consistent with the policy of increasing compensation to induce more medical doctors to become or remain coroners.
Acts 1984, No. 570 provided for a general reorganization and amendment of all of the statutory provisions pertaining to coroners, La. R.S. 33:1551 et seq. In particular, this act (1) renumbered La. R.S. 33:1558.1 to 33:1559; (2) made minor language changes to paragraphs A and B; and (3) repealed the ceiling on eligibility of a coroner to receive extra compensation previously provided for in paragraph D.[10] *218 Act No. 570 commenced its legislative voyage as Senate Bill 233. At the May 31, 1984 meeting of the Senate Committee on Local and Municipal Affairs, Dr. Hypolite Landry of the Louisiana Coroner's Association testified in support of this bill and stated that "[b]ecause of the low fees, small parishes are losing physicians as coroners." Dr. George McCormick, President of the Louisiana Coroner's Association, supported the bill and testified that "[m]any of the small parishes have doctors who are ready to quit; there are four parishes which do not have physician coroners." (In Carriere v. St. Landry Parish Police Jury, 97-1914, 97-1937 (La.3/4/98), 707 So.2d 979, the elected coroner was a lawyer.) The legislative actions in Acts 1984, No. 570 that (1) raised coroner fees and (2) eliminated the ceiling of eligibility of coroners for extra compensation were consistent with the legislature's prior policy of increasing compensation to induce more medical doctors to either remain or become coroners.
As previously indicated, commencing with the 1986-1987 fiscal year, the legislative branch has failed and/or refused to appropriate funds for the coroners' extra compensation. Further, the legislative branch has failed, refused and/or been unable to amend La. R.S. 33:1559 by which it created the State's obligation to pay the extra compensation to the coroners.

Interpretation of La. R.S. 33:1559 to Define the State's Obligation to Pay the Coroners' Extra Compensation
Louisiana Revised Statute 33:1559A provides that certain coroners "shall be paid five hundred forty-eight dollars per month by the state." (Emphasis added.) This language is clear and unambiguous. In La. R.S. 1:3, the legislature has directed that when interpreting a revised statute like La. R.S. 33:1559, the word "shall" is mandatory.
When the legislature enacted La. R.S. 33:1559A(2), it obviously knew the difference between shall and may because it used shall for the state's share and may for the share of the parish governing authority. From the time it was first enacted in 1978 until 1986, the legislature contemporaneously administered this statute as if it was mandatory. Cf. State v. BP Exploration & Oil, Inc., 96-0716, 96-2218, pp. 8-10 (La.1/14/97), 686 So.2d 823, 828.
In 1996, the 19th Judicial District Court in the Dawson case interpreted this statute as being mandatory. The State did not appeal this judgment. Instead, the legislature paid the sums due to the coroners under this statute from July 1, 1986, until 1996 by appropriation in Acts 1996, No. 6.
In Senate Bill No. 154 of 2001, the legislative branch attempted to make the mandatory payment of extra compensation to coroners discretionary and it failed. However, in Bill No. 154, the legislative branch legislatively confessed[11] to the meaning of the language of the present La. R.S. 33:1559, and what its amendments were intended to mean, with the following statements: (1) in the title of the bill"to permit rather than require the state to provide supplemental compensation to coroners" (Emphasis added.); (2) in the Digest for the bill"Present law provides that the state shall pay $548 per month in extra compensation to any coroner who is *219 paid a salary or a salary and fees" (Italics added); (3) in the fiscal note for the bill"permits, rather than requires the state to pay extra compensation to coroners" (Emphasis added.); and (4)(a) substituted may for shall in La. R.S. 33:1559A(1) and (2); (b) substituted which may be paid for payable in La. R.S. 33:1559B; and (c) added if such appropriation is made to the end of La. R.S. 33:1559B. The governor vetoed this legislation, and its original interpretation still prevails. This attempt to change the statute is significant because it is a well-settled rule of statutory interpretation that when the legislature enacts (or, in this case, attempts to enact) a statute with wording different from a preceding statute it (the legislature) is presumed to have intended to change the law. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695, pp. 17-18 (La.6/29/01), 808 So.2d 294, 305-306.
Louisiana Revised Statute 33:1559B provides, in pertinent part, that "[t]he extra compensation for coroners payable by the state ... shall be payable monthly by the state treasurer on the warrant of the coroners from funds appropriated by the legislature for this purpose." (Emphasis added.) As previously indicated, the State asserts that the phrase "from funds appropriated by the legislature for this purpose" renders the obligation of the State to pay discretionary and dependent on a legislative appropriation. Initially, it must be noted that there is a distinction between an obligation to pay and the payment of the obligation. (This distinction will be discussed in greater detail later in this opinion.) Second, paragraphs A and B of La. R.S. 33:1559 must be construed and interpreted in reference to each other. La. C.C. art. 13. Third, this interpretation (construction) urged by the State would render the mandatory provisions of paragraph A meaningless (nugatory). Finally, if La. R.S. 33:1559 is interpreted as creating a discretionary obligation that will be funded annually at the pleasure of the legislature, then the entire statute is not only meaningless and unnecessary but it also violates La. Const. of 1974, art. V, § 31 because it unconstitutionally authorizes the legislative branch to diminish the salary of a coroner during his or her term of office. (This will be discussed in greater detail later in this opinion.) In Elevating Boats, Inc. v. St. Bernard Parish, 00-3518, p. 18 (La.9/5/01), 795 So.2d 1153, 1166, the Louisiana Supreme Court observed as follows:
In construing legislative enactments, we must assume that the Legislature intended every word, phrase, and clause to have some meaning and that none was inserted by accident. Consequently, we will construe every provision of a statute in such a manner so as to give it some effect. (Citation omitted.)
See also City of Pineville v. American Federation of State, County, and Municipal Employees, AFL-CIO, Local 3352, 00-1983, pp. 3-4 (La.6/29/01), 791 So.2d 609, 612. Rendering a part, or the entirety, of a statute meaningless or unconstitutional is the last option available to a court when it interprets a statute under this jurisprudence. That option does not apply in this case.
Louisiana Revised Statute 33:1559A and B impose a mandatory obligation on the State to pay extra compensation to coroners.

Jurisprudence
In Carriere v. St. Landry Parish Police Jury, 97-1914, 97-1937, pp. 7-8 (La.3/4/98), 707 So.2d 979, 983, the Louisiana Supreme Court reviewed the statutes providing for the compensation for coroners and observed as follows:

*220 It is necessary to read the pertinent parts of § 1556 and § 1559 in pari materia in order to understand the entire compensation scheme envisioned by the legislature. The language of § 1559 recognizes three different methods of compensating coroners: a salary, a salary plus fees, or fees alone. It also requires the state to pay coroners extra compensation of $548/month, and allows parish governing bodies to pay coroners who rely solely on fees an additional $500/month if the parish governing body so desires. Reading § 1559 in conjunction with § 1556, it appears that there are two types of fee-basis coroners: those who are paid a salary plus fees and those that are paid fees only. Coroners compensated in either of these manners can collect the fees per service listed in § 1556(A), and only when it is contemplated that a coroner will be compensated exclusively with a salary is he excluded from application of § 1556(A).
. . . .
The court of appeal disagreed and reversed the trial court's judgment compelling the Police Jury to pay Carriere a $25,000 salary plus health insurance and retirement benefits. It interpreted § 1559(A)(2) as providing a purely discretionary option for parish governing bodies to provide coroners who receive only fees with an additional $500/month as extra compensation. The only mandatory language in § 1559 refers to the state's obligation to pay all coroners $548/month. Although Carriere pointed out that the state has scarcely appropriated funds to pay this statutory supplement, the court of appeal correctly noted that the state is not a party defendant in this suit. The court of appeal found it significant that the legislature provides salaries for other constitutionally enshrined state officials such as district attorneys and sheriffs, and it determined that it was also the legislature's responsibility to adequately compensate coroners. It declined to impose the burden of providing salaries to coroners on parish governing bodies absent "clear instruction" from the legislature to do so.

We agree with the conclusion reached by the court of appeal. (Emphasis added.)
It is arguable that we are obligated to follow this interpretation. State v. Nelson, 01-0725, p. 11 (La.App. 1 Cir. 3/28/02), 817 So.2d 158, 165.

Time Period (Term) for Paying Extra Compensation to Coroners
Coroners are elected for terms of four years. La. Const. of 1974, art. V, § 29; La. R.S. 33:1551. Coroners take office on the fourth Monday in March following the gubernatorial election. The coroners in this case who were elected in 1995 took office on March 25, 1996, and those who were elected in 1999 took office on March 27, 2000, and their terms of office will expire on the fourth Monday of March in 2004.
As previously indicated, the legal relationship between the State and a coroner is a nominate contract of onerous mandate; the State is the principal and the coroner is the mandatary. Term and compensation are obligations of an onerous contract of mandate.
It appears well settled that a person elected to a public office ordinarily has no vested prospective right that prevents a legislative branch, or other proper authority, from abolishing the office, reducing the term of office or reducing the rate of compensation for the office. Fisk v. Police Jury of Jefferson, Left Bank, 116 U.S. 131, 133-134, 6 S.Ct. 329, 330, 29 L.Ed, 587 (1885); Periconi v. State, 91 *221 Misc.2d 823, 827-829, 398 N.Y.S.2d 959, 963-964 (N.Y.Ct.Cl.1977). However, there is a vested right for compensation after services have been performed by a public officer pursuant to a legislatively fixed compensation schedule. In Fisk, 116 U.S. at 134, 6 S.Ct. 329 appears the following:

But, after the services have been rendered, under a law, resolution, or ordinance which fixes the rate of compensation, there arises an implied contract to pay for those services at that rate. This contract is a completed contract. Its obligation is perfect, and rests on the remedies which the law then gives for its enforcement. The vice of the argument of the supreme court of Louisiana is in limiting the protecting power of the constitutional provision against impairing the obligation of contracts, to express contracts,to specific agreements,and in rejecting that much larger class in which one party having delivered property, paid money, rendered service, or suffered loss at the request of or for the use of another, the law completes the contract by implying an obligation on the part of the latter to make compensation. This obligation can no more be impaired by a law of the state than that arising on a promissory note. The case of Fisk was of this character. His appointment as district attorney was lawful, and was a request made to him by the proper authority to render the services demanded of that office. He did render these services for the parish, and the obligation of the police jury to pay for them was complete. Not only were the services requested and rendered, and the obligation to pay for them perfect, but the measure of compensation was also fixed by the previous order of the police jury. There was here wanting no element of a contract. The judgment in the court for the recovery of this compensation concluded all these questions. (Emphasis added.)
Finally, the Louisiana Constitution protects the salaries and benefits of coroners and other elected public officials. Louisiana Constitution of 1974, art. V, § 31 provides, in pertinent part, that "[t]he salaries and retirement benefits of [a] ... coroner ... shall not be diminished during his term of office." (Emphasis added.) See also La. Const. of 1974, art. V, § 21 and art. X, § 23. For elected, rather than appointed, coroners, this protection attaches at the time the coroner is elected (not at the time that he or she takes office, as is the case for appointed coroners). Avoyelles Parish Justice of the Peace v. Avoyelles Parish Police Jury, 98-543, p. 12 (La.App. 3 Cir. 6/23/99), 758 So.2d 161, 167-168, writ denied, 99-2210 (La.12/17/99), 754 So.2d 217.[12] In Avoyelles Parish Justice of the Peace, 98-543, p. 14, 758 So.2d at 169, appears the following:
The follies of the past eventually spawned adoption of the federal compensation guarantees found in our United States Constitution. There exists no shortage of excuses, some vindictive others prompted by legitimate fiscal concerns, which might motivate those in control of the public purse to reduce the salaries of elected officials. But the "legitimacy of popular elections in our democratic society" demands that the public and the officials they elect know on the day of election that at least "during the term for which [the official] is elected" neither the compensation nor the term *222 then fixed for the office will be decreased for any reason.
Louisiana Revised Statute 33:1559 has been in effect at all times pertinent to this case.
The State has a mandatory obligation to pay the extra compensation to the coroners (1) until this statute is repealed, (2) the money is paid, or (3) the terms for which the coroners are elected expire, whichever comes later. (See the decrees on original hearing and on rehearing in Redwine v. State, 94-0160 (La.App. 1 Cir. 12/22/94), 649 So.2d 61.)

Applicability of Redwine v. State

The Redwine case is very similar to the instant case. In Redwine, La. R.S. 13:2591 provided that every justice of the peace and constable "shall be paid by the state an additional salary ..." of $50.00 per month. (Emphasis added.) Like coroners, justices of the peace (JPs) and constables are elected public officers provided for in the judicial branch of the constitution. La. Const. of 1974, art. V, § 20; La. R.S. 13:2582; La. R.S. 13:2583. JPs and constables are elected for six-year terms at a congressional election and take office on the first day of January following the election. La. R.S. 13:2582B and 13:2583B. The terms of JPs and constables who were in office on September 7, 1984, expired on December 31, 1990. La. R.S. 13:2582C and 13:2583C.
In Redwine, the JPs and constables were paid their extra compensation of $50.00 per month until July 1, 1988. By Acts 1988, No. 19, the legislature failed and/or refused to appropriate any money for the extra compensation, even though La. R.S. 13:2591 was not amended or repealed. The legislature did not appropriate money for the JPs' and constables' extra compensation thereafter until Acts 1994, No. 15, effective August 15, 1994.
The JPs and constables filed suit for their unpaid extra compensation on October 6, 1988. The trial court ultimately rendered judgment in favor of them and against the State for the monthly compensation from July 1, 1988, through December 31, 1990 (when their terms of office expired).
The JPs and constables appealed asserting the trial court erred by failing to award extra compensation after December 31, 1990, after they commenced serving their new six-year terms of office. The State also appealed asserting the trial court erred as a matter of law in ordering the payment of the extra compensation because La. R.S. 13:2591 "envisions a salary supplement for justices of the peace and constables, provided funds are available and appropriated by the legislature."
This court on original hearing affirmed the trial court judgment with the following rationale at Redwine, 94-0160, pp. 6-7, 649 So.2d at 64-65:

Under LSA-R.S. 13:2591, the salary of justices of the peace and constables includes a minimum salary supplement of $50.00 per month. The constitution prohibits the reduction of the salary of justices of the peace and constables, including the $50.00 monthly pay supplement, during their terms of office. As such, the Department could not lawfully refuse to remit the $50.00 monthly pay supplement to the plaintiffs and members of the plaintiff classes.
We note that during the 1988 legislative session, the legislature did not amend LSA-R.S. 13:2591 A to remove or qualify the salary supplement to the availability of funds or the appropriation of funds in the appropriations bill. The legislature cannot do indirectly what the constitution prohibits it from doing directly.

We note that, by Acts 1992, No. 897 the legislature amended and reenacted *223 LSA-R.S. 13:2591 A to include language that the salary supplements were predicated upon the appropriation of funds by the legislature. The amended version of LSA-R.S. 13:2591 A, effective August 21, 1992, currently provides as follows:
Every justice of the peace and every constable for each justice of the peace court in the state shall be paid by the state an additional salary equal to the amount paid justices of the peace and constables by their respective parishes, in no event to exceed one hundred dollars per month, provided funds are available and appropriated by the legislature.[13]
Clearly, for all justices of the peace and constables whose terms of office commenced after the effective date of the 1992 amendment to LSA-R.S. 13:2591, the monthly salary supplement, not to exceed $100.00 per month, may be dependent upon the availability and appropriation of funds by the legislature; however, justices of the peace and constables whose terms of office commenced prior to the effective date of the 1992 amendment to LSA-R.S. 13:2591 are entitled to the salary supplement of $50.00 per month. (Underline added; citation omitted; footnotes omitted.)
Apparently, the JPs and constables applied for a rehearing because "we [the court] failed to modify the trial court judgment to award the plaintiffs [JPs and constables] the salary supplement after December 31, 1990." Redwine, 94-0160, p. 6, 649 So.2d at 65 (per curiam). This court granted the rehearing, and in a per curiam opinion at Redwine, 94-0160, p. 7, 649 So.2d at 65, ruled as follows:

Clearly, all justices of the peace and constables included as appropriate plaintiffs in this litigation who were elected to terms of office which commenced prior to August 21, 1992 (the effective date of Acts 1992, No. 897), are entitled to the $50.00 monthly pay supplement. As such, the trial court judgment should have been amended to award the plaintiffs and the members of the plaintiff classes the monthly salary supplement from January 1, 1991, through July 31, 1994.
Therefore, the application for rehearing is granted for the limited purpose of amending the conclusion and decree of our original judgment to provide as follows:
For the above reasons, the trial court judgment is amended to award the plaintiffs and the members of the plaintiff classes the sum of $50.00 per month from January 1, 1991, through July 31, 1994, together with legal interest thereon from each payment's due date until paid. In all respects, the judgment of the trial court is affirmed. Costs of this appeal, in the amount of $513.39, are assessed against the Department. (Emphasis added.)
Thus, the Redwine court ruled that because the legislature did not repeal or modify La. R.S. 13:2591 prior to 1992, the State was obligated to pay the extra compensation of the JPs and constables during the entire time the legislature failed and/or refused to appropriate funding from July 1,1988 to July 31, 1994.
The judgment of the trial court in the instant case is in exact compliance with Redwine.

Repeal By Implication
In brief and oral argument, the State asserts that the failure and/or refusal *224 of the legislature to appropriate funds for the coroners' extra compensation implicitly repeals La. R.S. 33:1559. Specifically, the State asserts the following:
It is clear that the Legislature did, in fact, intend R.S. 33:1559 to provide extra compensation to the coroners of Louisiana because the Legislature demonstrated its intent by appropriating the funds for several years. This statute and all others requiring annual appropriations by the Legislature are somewhat unique in that the Legislature is allowed to re-express its intent every year when it comes time to appropriate the funds. Therefore, there has been an annual re-expression of legislative intent in this case. For many years now, there can be no dispute that the Legislature has determined not to appropriate funds for coroners' extra compensation.
The coroners' interpretation that the statute imposes a mandatory obligation upon the Legislature to appropriate these funds leads to the inevitable conclusion that the Legislature has expressed its intent through the annual appropriations acts to implicitly repeal R.S. 33:1559.
The general law on repeal by implication is set forth in State v. Craig, 93-2515, p. 7 (La.5/23/94), 637 So.2d 437, 443, as follows:
Repeals by implication require a determination of whether there is some indication of a legislative "intention to repeal" the statutes in question. State v. Randall, 219 La. 578, 53 So.2d 689, 691 (1951). Such implied repeals are "not favored and will not be indulged if there is any other reasonable construction." State v. Standard Oil of La., 188 La. 978, 178 So. 601, 626 (1937). A repeal by implication requires "nothing short of irreconcilable conflict between two statutes." Id.

In United States v. Langston, 118 U.S. 389, 21 Ct.Cl. 506, 6 S.Ct. 1185, 30 L.Ed. 164 (1886), the minister resident and general counsel of the United States at the Republic of Hayti was appointed in 1877 pursuant to an act of Congress with a statutorily designated salary of $7,500.00 per year. He was paid that salary through 1881. During the years of 1882, 1883 and 1884, the appropriations for his salary were only $5,000.00 per year. He brought suit for the difference and the court of claims rendered judgment in his favor. Noting that repeals by implication are not favored, the United States Supreme Court affirmed the award at Langston, 118 U.S. at 394, 6 S.Ct. at 1187, with the following rationale:
While the case is not free from difficulty, the court is of opinion that, according to the settled rules of interpretation, a statute fixing the annual salary of a public officer at a named sum, without limitation as to time, should not be deemed abrogated or suspended by subsequent enactments which merely appropriated a less amount for the services of that officer for particular fiscal years, and which contained no words that expressly, or by clear implication, modified or repealed the previous law.
See also State ex rel. Fournet v. Tugwell, 199 La. 18, 5 So.2d 370 (La.1941), holding that the general appropriation act of 1940 did not repeal by implication portions of Acts 1914, No. 26.
Louisiana Constitution of 1974, art. III, § 15A provides, in pertinent part, that "[e]very bill shall contain a brief title indicative of its object." A review of the general appropriation bills from 1996 through 2002 shows that nowhere in the titles or bodies of the bills is there an expression of a legislative intent to repeal or amend La. R.S. 33:1559. Instead, the legislative history of La. R.S. 33:1559 shows that at the 2001 regular session of the legislature a *225 bill was introduced to amend La. R.S. 33:1559 to make the State's payment of the coroners' extra compensation discretionary rather than mandatory. This attempt to amend failed when the governor vetoed the legislation. No attempt was made to override the governor's veto, even though the bill passed the Senate by a 37-0 vote and passed the House of Representatives by a 101-1 vote.
Finally, in Redwine, the State asserted that "if the legislature does not appropriate the necessary monies to fund these salary supplements, it is not required to remit salary supplements to the justices of the peace or constables." Redwine, 94-0160, p. 4, 649 So.2d at 63. The Redwine court noted that the constitution prohibits the reduction of the salaries of JPs and constables during their terms of office and that the legislature did not amend La. R.S. 13:2591A to remove the salary supplement. The Redwine court found the State's argument without merit with the observation that "[t]he legislature cannot do indirectly what the constitution prohibits it from doing directly." Redwine, 94-0160, p. 6, 649 So.2d at 64. The Redwine court awarded the JPs and constables supplemental pay from July 1, 1988, until July 31, 1994, the time period during which the legislature failed and/or refused to appropriate funding.

Conclusion
These assignments of error are without merit.

OBLIGATION OF THE LEGISLATIVE BRANCH TO APPROPRIATE FUNDS TO PAY THE STATE'S OBLIGATION FOR THE CORONERS' EXTRA COMPENSATION

(Assignment of Error No. 1)
The State asserts "(t)he trial court erred, as a matter of law, in holding that LSA-R.S. 33:1559 imposes a mandatory obligation upon the State of Louisiana ... to appropriate the funds to pay such supplemental pay." The State asserts that pursuant to La. Const. of 1974, art. III, § 16(A), art. VII, § 10(D)(1) and art. XII, § 10(C), the coroners' extra compensation can be paid only out of funds appropriated therefor by the legislature and that the legislature has discretion in making such an appropriation.

Separation of Powers
Amendment X of the Constitution of the United States provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Pursuant to La. Const. of 1974, art. I, § 26, Louisiana is a sovereign state "and forever hereafter shall exercise and enjoy every power, jurisdiction, and right, pertaining thereto, which is not, or may not hereafter be, by them expressly delegated to the United States of America in congress assembled." Since 1812, the people of Louisiana have adopted constitutions as their organic law. A state constitution does not grant (delegate) power like the United States Constitution. A state constitution is a document of limitation because its provisions are limitations upon the plenary powers reserved to the state and held by its people. Louisiana Dep't. of Agric. and Forestry v. Sumrall, 98-1587, p. 6 (La.3/2/99), 728 So.2d 1254, 1259.
Article II of the constitution divides the powers of government of the State into three separate branches: legislative, executive and judicial. The legislative (law making) power of the State is vested in the legislative branch. La. Const. of 1974, art. III, § 1. The executive branch applies and *226 enforces the laws enacted by the legislative branch. La. Const. of 1974, art. IV, § 1 et seq. The judicial power (determining what the law is and how it should be applied to specific cases) is vested in the courts as provided for in La. Const. of 1974, art. V. Louisiana Constitution of 1974, art. II, § 2 provides that "[e]xcept as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." (Emphasis added.) It is fundamental to the existence of our constitutional regime of separation of powers that one branch shall not exercise its powers in a manner that limits or deprives another branch of its ability to perform its constitutional functions. Cf. Board of Elementary and Secondary Educ. v. Nix, 347 So.2d 147, 155 (La.1977).
It also is implicit in the separation of powers regime that each of the branches has the plenary (inherent) power of the State to perform the functions constitutionally assigned to it, except insofar as that power may be limited by the constitution.[14]Cf. Safety Net for Abused Persons v. Segura, 96-1978, pp. 3-4 (La.4/8/97), 692 So.2d 1038, 1041.

Recapitulation of Legislative, Executive and Judicial Branch Facts
In 1978, the legislature imposed a mandatory obligation on the State to pay extra compensation to the coroners. The coroners are elected officials in the judicial branch and their extra compensation is to be paid by the treasurer, an elected official in the executive branch. The legislature appropriated funds to pay this obligation of the State until 1986. Since 1986, the legislature has failed and/or refused to appropriate money to satisfy the State's mandatory obligation to pay the coroners' extra compensation. However, the legislature has failed, refused and/or been unable to amend or repeal its statute that imposes the mandatory obligation on the State to pay the coroners' extra compensation. This has caused the State to breach its mandatory obligation owed to the coroners.
In 1995, in the Dawson case, the coroners filed suit against the State for unpaid extra compensation from 1986 to date. In 1996, a district court judge (judicial branch) ruled that the State's "failure to pay extra compensation ... impairs the function of the office of coroner ... impinges upon the separation of powers" and "reduces the pay of elected public officials during their term of office", and that all of this was unconstitutional. Judgment was rendered in favor of the coroners and against the State for the unpaid compensation. The State did not appeal this judgment and paid it via a legislative appropriation of funds. However, after this appropriation was made, the legislature continued to fail and/or refuse to appropriate funds to satisfy the State's mandatory obligation to pay the extra compensation to the coroners. Thus, because of the legislature's failure to comply with its own law, the State continued to breach its mandatory obligation to pay extra compensation to the coroners.
At its 2001 Regular Session, the legislature attempted to amend La. R.S. 33:1559 from a mandatory statute to a discretionary statute insofar as it pertained to the State's obligation to pay extra compensation to coroners. The legislature enacted the proposed amendments to the statute *227 but the governor vetoed the act. Pursuant to La. Const. of 1974, art. IV, § 5(A) "(t)he governor shall be the chief executive officer of the state" and "(h)e shall faithfully support the constitution and laws of the state ... and shall see that the laws are faithfully executed." (Emphasis added.) Thus, the chief executive officer of the executive branch of the State stopped the legislative branch from, in effect, reducing the salary of elected officers (coroners) of the judicial branch. Nevertheless, the State's treasurer, who is an elected officer in the executive branch, still refuses to pay the coroners' extra compensation without an appropriation from the legislative branch.[15] Pursuant to La. Const. of 1974, art. IV, § 9, the treasurer is the head of the Department of the Treasury and "shall be responsible for the custody, investment, and disbursement of the public funds of the state, except as otherwise provided by this constitution." (Emphasis added.) The legislative branch still refuses to enact appropriations to fund this mandatory obligation it (the legislature) has imposed upon the State.
In 2000, the coroners again filed suits[16] against the State for payment of their extra compensation. In this case, the district court judge (judicial branch) granted summary judgment in favor of the coroners and against the State with the observation that "LSA-R.S. 33:1559 places a mandatory obligation upon the State of Louisiana to pay the supplemental pay due... under said statute and to appropriate the funds to pay such supplemental pay...." The treasurer (executive branch), on behalf of the State, has taken this appeal from the judgment rendered in favor of the coroners (judicial branch).

The Power of the Legislative Branch to Appropriate the State's Money
Louisiana Constitution of 1974, art. III, § 16(A) pertaining to appropriations by the legislative branch provides as follows:
Specific Appropriation for One Year. Except as otherwise provided by this constitution, no money shall be withdrawn from the state treasury except through specific appropriation, and no appropriation shall be made under the heading of contingencies or for longer than one year. (Emphasis added.)
Louisiana Constitution of 1974, art. VII, § 10(D)(1) pertaining to the expenditure of state funds provides as follows:
Appropriations. (1) Except as otherwise provided by this constitution, money shall be drawn from the state treasury only pursuant to an appropriation made in accordance with law. Appropriations from the state general fund and dedicated funds except funds allocated by Article VII, Section 4, Paragraphs (D) and (E) shall not exceed the expenditure limit for the fiscal year. (Emphasis added.)
Louisiana Constitution of 1974, art. XII, § 10(A) and (C) provide as follows:
(A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
(C) Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this *228 constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered. (Emphasis added.)
The legislature has supplemented these constitutional provisions with La. R.S. 13:5109B(2) that provides as follows:
Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.
Louisiana Constitution of 1974, art. III, § 16(A), art. VII, § 10(D)(1) and art. IV, § 9 (the treasurer's duties) have the same subordinating phrase that provides that "[e]xcept as otherwise provided by this constitution." Louisiana Revised Statute 13:5109B(2) is a statute and must yield to any conflicting constitutional provision. There is no subordinating clause attached to the last sentence of La. Const. of 1974, art. XII, § 10(C).
In Meredith v. Ieyoub, 96-1110, p. 5 (La.9/9/97), 700 So.2d 478, 481, appears the following:
It is elementary that the "fiscal affairs of the state, the possession, control, administration, and disposition of the property, funds, and revenues of the state, are matters appertaining exclusively to the legislative department." State v. Duhe, 201 La. 192, 9 So.2d 517, 521 (1942) (citing Carter v. State, 42 La.Ann. 927, 933, 8 So. 836, 837 (1890)). This longstanding principle also applies under the 1974 Constitution, as we have more recently held that "[t]he legislature has control over the finances of the state, except as limited by constitutional provisions." Louisiana Ass'n of Educators v. Edwards, 521 So.2d 390, 394 (La.1988). There, we further elaborated on the separation of powers doctrine, holding that "[e]xcept as expressly provided by the constitution, no other branch of government, nor any person holding office in one of them may exercise the legislative function." Id. (Underline added.)
The constitutional provisions on legislative appropriations must be interpreted in reference to each other and with reference to the constitutional provision on reducing a coroner's salary during his or her term of office, La. Const. of 1974, art. V, § 31, to decide this assignment of error.

Constitutional Prohibition Against Reducing the Salary of a Coroner
The legal relations between the State and the coroners are controlled by a contract. The coroners have obligated themselves to perform the duties imposed on them by La. R.S. 33:1551 et seq. and La. C.Cr.P. art. 101 et seq. (acts of the legislative *229 branch), and the State is obligated to compensate the coroners pursuant to La. R.S. 33:1556 and 1559 (also acts of the legislative branch). However, the legislative branch has caused the State to breach its mandatory obligation to pay extra compensation to the coroners by failing and/or refusing to appropriate the funds therefor. The treasurer (in the executive branch) has contributed to this breach by refusing to pay the extra compensation without a legislative appropriation of the funds.
Because La. Const. of 1974, art. XII, § 10(A) waives sovereign immunity for actions on contracts, the coroners have access to the courts (judicial branch) for "an adequate remedy by due process of law...." (Emphasis added.) La. Const. of 1974, art. I, § 22. Pursuant to La. Const. of 1974, art. XII, § 10(C), the legislature "shall provide a procedure for suits against the state ... and provide for the effect of a judgment ...." The legislature has complied with this mandate by enacting La. R.S. 13:5101 et seq. These statutes are supplemented by the Civil Code, Revised Statutes and the Code of Civil Procedure (also acts of the legislative branch). In particular, La. R.S. 13:5103 provides that "[a]ll procedural questions arising in suits on claims against the state ... shall be determined, except as the contrary is specified in this part, in accordance with the rules applicable to suits between private parties."
Louisiana Civil Code art.1983 provides as follows:
Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith. (Emphasis added.)
The State has breached its contracts with the coroners. Pursuant to La. Const. of 1974, art. I, § 22 and the Civil Code, substantive remedies available to the coroners are specific performance, La. C.C. art.1986 et seq., or dissolution and damages, La. C.C. art.2013 et seq. The coroners have chosen specific performance. Louisiana Civil Code art.1986 provides as follows:

Upon an obligor's failure to perform an obligation to deliver a thing, or not to do an act, or to execute an instrument, the court shall grant specific performance plus damages for delay if the obligee so demands. If specific performance is impracticable, the court may allow damages to the obligee. (Emphasis added.)
Further, the Code of Civil Procedure provides for the extraordinary procedural remedy of mandamus. La. C.C.P. art. 3861 et seq. Mandamus is a writ "directed to a public officer to compel the performance of a ministerial duty required by law ...." La. C.C.P. art. 3863.
Louisiana Constitution of 1974, art. V, § 31, entitled "Reduction of Salaries and Benefits Prohibited" provides as follows:

The salary and retirement benefits of an attorney general, district attorney, sheriff, coroner, or clerk of the district court shall not be diminished during his term of office. (Emphasis added.)
The records of the constitutional convention show that the redactors of the constitution were very concerned about abusive legislative control of public officials by the "power of the purse" and adopted two other similar constitutional provisions. Louisiana Constitution of 1974, art. V, § 21, entitled "Judges; Decrease in Terms and Compensation Prohibited", provides as follows:
The term of office, retirement benefits, and compensation of a judge shall not be decreased during the term for which he is elected.
*230 Louisiana Constitution of 1974, art. X, § 23 provides as follows:
The compensation of an elected public official shall not be reduced during the term for which he is elected.
The concern of the 1973 constitutional convention delegates is reflected in the following excerpt from the convention transcript at Vol. 5, Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, pp. 391-392 for July 26, 1973:

Mr. Kean Mr. Chairman, fellow delegates, I rise to pursue the point which Mr. Dennery was making when he questioned Mr. Roy. The effect of the Asseff amendment would be to completely delete this entire Section which would then permit the legislature to reduce the salaries of the public officials during their term of office. And I say to the members of this convention, that if we do that we can lead to the grossest kind of abuses with respect to the salary of public officers at the mercy of a simple majority of the legislature. I have no objection to giving the legislature by majority vote the right to fix that but when you come to the point of permitting the legislature during a term of office to reduce salaries by a simple majority, I think we go too far. And I ask that you reject the Asseff amendment and if we want to come back and redo this section so as to make it applicable only to the reduction of the salary during the term of office, then do it, but not take that part out of the constitution where it has to be if we are to provide a first choice against reduction.
Questions

Mr. Arnette Mr. Kean, if this particular amendment is adopted, do you foresee the situation that an appointed or even an elected official such as the attorney general for instance could have his salary reduced to $1.00 a year?

Mr. Kean Yes, I certainly do.

Mr. Arnette And this would in effect make him resign his position if he was not financially independent, is that true also?

Mr. Kean That is correct.

Mr. Arnette So in effect you are letting one majority of the legislature actually impeach say, the attorney general or the secretary of state or anybody else that is appointed, is that correct?

Mr. Kean As I appreciate the amendment, and this article previously made for this section, it applies to all public officials appointed or elected. Under those circumstances the legislature by simply a majority could reduce his salary to nothing.
Finally, in Avoyelles Parish Justice of the Peace, 98-543, pp. 7-8, 758 So.2d at 165-166, appears the following:
The important relationship of elected public officials' compensation to their independence and ability to execute their duties in office is by no means a new idea initiated by the authors of La. Const. art. V, §§ 21 and 31 and art. X, § 23. Both the Compensation Clause and the Twenty-Seventh Amendment found in the United States Constitution embody this idea in protecting the salaries of federal judges, senators, and representatives during their terms of office. The tortured and long history, predating adoption of these provisions, foretells the reasons for the framers enacting them. See Richard B. Bernstein, The Sleeper Wakes: The History and Legacy of the Twenty-Seventh Amendment, 61 Fordham L.Rev. 497 (1992); United States v. Will, 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980). As Alexander Hamilton wrote in The Federalist *231 No. 79, p. 491 (1818) (emphasis deleted): "In the general course of human nature, a power over a man's subsistence amounts to a power over his will." Americans in the 1770's and 1780's were keenly aware, from their familiarity with British history, that the framers of its constitution had neglected to adequately provide for and protect the compensation of elected officials. This led ultimately to extraordinary corruption in the British constitutional system and chained elected officials to the will of the King. In Will, the United States Supreme Court noted:
[T]he declaration of Independence, in listing the grievances against the King, complained: `He has made Judges dependent on his will alone, for the tenure of their offices, and the amount and payment of their salaries.'

Will, 449 U.S. at 219, 101 S.Ct. at 482. Thus, the framers of our United States Constitution knew well to guard against this "evil of democracy" by including a prohibition in Art. III, § 1 specifically barring any diminution of judges' compensation "during their Continuance in Office;" and likewise, the Twenty-Seventh amendment recently adopted declares "[n]o law, varying the compensation for the services of Senators and Representatives, shall take effect, until an election for Representatives shall have intervened." U.S. Const. amend. XXVII.[17] (Footnote omitted.)
Louisiana Constitution of 1974, art. V, § 31 is clear and unambiguous. The legislature is prohibited from reducing the salary of a coroner during his or her term of office. This constitutional provision gives a vested right to a coroner that protects his or her salary during his or her term of office. This right attaches when the coroner is elected or, if he or she is appointed, at the time he or she takes office. Louisiana Revised Statute 33:1559 has been in effect at all times pertinent to these proceedings. The coroners elected in 1995 took office on March 25, 1996; those elected in 1999 took office on March 27, 2000; the terms of office of those elected in 1999 will expire on the fourth Monday of March in 2004. The State has a mandatory duty to pay the coroners $548.00 per month extra compensation during their terms of office and the present term of office does not expire until the fourth Monday of March 2004 (March 22, 2004). The legislature can reduce the salaries of the coroners for their terms of office commencing on the fourth Monday of March 2004 provided the statute doing so is enacted prior to the coroners' elections for that term.
Pursuant to La. Const. of 1974, art. IV, § 9, the treasurer "shall be responsible for the ... disbursement of the public funds of the state, except as otherwise provided by this constitution." Pursuant to art. V, § 31 of this constitution, the coroners are *232 entitled to be paid monthly extra compensation of $548.00. The Article III legislative branch provision on the appropriation of State money and the Article VII revenue and finance provision on the expenditure of State money have identical subordinating clauses that state "Except as otherwise provided by this constitution...." Although the last sentence of art. XII, § 10(C) does not have a subordinating clause, it only applies to a "judgment against the state".
The instant case is similar to Perron v. Evangeline Parish Police Jury, 01-0603, (La.10/16/01), 798 So.2d 67. In that case, the Louisiana Supreme Court reversed the court of appeal and reinstated a trial court judgment granting a writ of mandamus against a political subdivision, which writ ordered the political subdivision to fund a coroner's necessary expenses for the operation of his office as provided for in La. R.S. 33:1556. The last sentence of art. XII, § 10(C) provides, in pertinent part, that "[n]o judgment against ... a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor ... by the political subdivision against which the judgment is rendered." The Evangeline Parish Police Jury is a political subdivision. La. Const. of 1974, art. VI, § 44(2). Article XII, § 10(C) applies to the state, a state agency or a political subdivision. Nevertheless, the Louisiana Supreme Court affirmed the writ of mandamus to compel the payment of the money with the following rationale found in Perron, 01-0603, pp. 9-10, 798 So.2d at p. 73:
Under the particular facts of this case, we do not find that an order directing the police jury to appropriate funds for the coroner's attorney fee expenses violates the doctrine of separation of powers. In concluding that it was prohibited from awarding attorney fee expenses to plaintiff, the court of appeal cited Gongre v. Mayor and Bd. of Aldermen of Town of Montgomery, 98-677 (La.App. 3 Cir. 10/28/98), 721 So.2d 968, writ denied, 98-2954 (La.1/29/99), 736 So.2d 834, and Landry v. City of Erath, 628 So.2d 1178 (La. App. 3 Cir.1993), writ denied, 94-0275 (La.3/25/94), 635 So.2d 235, each of these cases finding a violation of the separation of powers doctrine when a court orders a governing body to appropriate money when there is no statutory duty to do so. In Carriere, 707 So.2d at 982, this court did recognize the separation of powers principle, which limits a court's power to place the responsibility of funding state officials on parishes unless a clear legislative mandate exists compelling such funding. While cognizant of this principle, we nonetheless conclude that the legislature has determined that attorney fee expenses incurred by the coroner's office, so long as they are "necessary or unavoidable expenses... incident to the operation and functioning of the coroner's office," are payable by the parish police jury. La. Rev.Stat. 33:1556(B)(1). In finding that the legislature has mandated the parish to pay these expenses, we are simply interpreting and enforcing this statute, not legislating a judicial solution. Thus, we discern no violation of the doctrine of separation of powers. (Emphasis added.)
In the instant case, the legislature has imposed a mandatory obligation on the State to pay extra compensation to coroners pursuant to La. R.S. 33:1559. The failure to pay this compensation breached the contract between the State and the coroners. In this particular factual situation, the legislature has provided the substantive and procedural law applicable for this breach and, in particular, provided the remedies of specific performance in La. *233 C.C. art.1986 et seq. and mandamus in La. C.C.P. art. 3861 et seq. Thus, like the court in Perron, the trial court in this case simply interpreted La. Const. of 1974, art. V, § 31 and enforced La. R.S. 33:1559 pursuant to legislation in the Civil Code, Revised Statutes and Code of Civil Procedure; it did not legislate a judicial solution.
Even if we assume for the sake of argument that art. V, § 31 is in conflict with the constitutional provisions on legislative appropriation of funds, the State cannot prevail. Pursuant to the standard rules for statutory construction (1) it is presumed that every provision of law was intended to serve some useful purpose; (2) it is not presumed that the lawmaker intended for any part of a law to be meaningless; (3) the lawmaker is presumed to have enacted the law with full knowledge of all other laws pertaining to the same subject matter; (4) it is the duty of the courts to interpret a provision of law which harmonizes and reconciles it with other provisions pertaining to the same subject matter; and (5) when a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is preferred to one that renders part of the act nugatory. As previously indicated, rendering the whole, or a part, of a law meaningless is the last option available to a court when it interprets a law.
As previously indicated, there are three different provisions in the constitution that protect the salaries of public officials during their terms of office. Those protected are judges, the attorney general, district attorneys, sheriffs, coroners, clerks of the district court and all elected public officials. There are very strong policy reasons for having these protective provisions. The records of the constitutional convention show these provisions were intended to have meaning and that meaning was to limit the appropriation power of the legislative branch. Accordingly, these provisions must be construed as specific exceptions to the general provisions on appropriation of funds. Kennedy v. Kennedy, 96-0732, p. 2 (La.11/25/96), 699 So.2d 351, 358. To do otherwise, as a practical matter, would give the legislature absolute discretion over the appropriation of funds for the protected salaries and render these salary protection provisions meaningless. Further, the "ripple" effect of such a decision could have serious adverse effects, not only for coroners, but also for judges, the attorney general, district attorneys, clerks of the district court, elected public officials and the regime of separation of powers. Redwine correctly and wisely observed that "[t]he legislature cannot do indirectly what the constitution prohibits it from doing directly." Redwine, 94-0160, p. 6, 649 So.2d at 64. We agree.

Conclusion
Under the specific facts and circumstances of this case,[18] this assignment of error is without merit.

*234 THE CORONERS' ASSIGNMENT OF ERROR
In their appellate brief, the coroners assign the following error:
The Trial Court erred, as a matter of law, in granting the Defendant-Appellant's Exception of Prescription with respect to that portion of the Plaintiff-Appellee's claims older than three years from the filing of the original Petition. The Trial Court's ruling on prescription is unconstitutional in that it reduces the coroners' salaries during the terms of offices in violation of the La. Const. Art. 5, Section 31.
A review of the record reflects that the coroners did not appeal or answer the appeal. Thus, they may not have the judgment amended in their favor. La. C.C.P. art. 2133; Matthews v. Consolidated Companies, Inc., 95-1925 (La.12/8/95), 664 So.2d 1191; Hollenbeck v. Oceaneering International, Inc., 96-0377, p. 11 (La. App. 1 Cir. 11/8/96), 685 So.2d 163, 171, writ denied, 97-0493 (La.4/4/97), 692 So.2d 421.
This assignment of error is not considered.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. The State is cast for the costs of this appeal of $856.99.
AFFIRMED.
PETTIGREW, J., concurs with the results.
KUHN, J., concurs for reasons assigned by Judge FITZSIMMONS.
PATTERSON, J., concurs for reasons assigned by Judge FITZSIMMONS.
CARTER, C.J., concurs.
GUIDRY, J., concurs.
FITZSIMMONS, J., concurs in part and assigns reasons.
FITZSIMMONS, Judge, concurring with reasons.
I respectfully concur in the result reached to affirm the decision of the trial court. I cannot, however, embrace the majority's categorization of the relationship between a coroner and the State of Louisiana as one of conventional obligation. Such an expansion in jurisprudential interpretation would create a mudslide of confusion.
All contracts, or conventional obligations as they are recognized in this jurisdiction, are either nominate or innominate. La. C.C.1914. Moreover, La. C.C. art.1915 applies the rules for contracts to any and all contracts. By classifying the coroner/State relationship as one of a nominate conventional obligation, each party involved in said obligation would be entitled to recourse via the entirety of the Louisiana rules for contracts. Contract law does not serve as the basis for suits against a legislatively created official, who assumes the role of a public servant to the citizens. The employment relationship at hand does not involve a contract, a master-servant relationship, or a principle-mandatary arrangement.
The majority's adoption and extension of conventional contract law to this publicly created position is not only inapposite, it is unnecessary. One only needs to look to the Louisiana Constitution to find a direct resolution to the debate. The Louisiana Constitution of 1974, Article V, section 31, unequivocally and unambiguously provides that the legislature is prohibited from reducing the salary of a coroner during his *235 or her term of office. The legislature's failure to appropriate money for the coroner's supplemental pay of $548.00 per month constituted a direct violation of that constitutional mandate.
NOTES
[1] The Hon. Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeal, is serving as judge ad hoc by special appointment of the Louisiana Supreme Court.
[2] The Hon. Michael A. Patterson, Judge, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[3] The Hon. Vanessa G. Whipple, J., recused.
[4] On April 19, 2000, fourteen coroners filed the original suit. On April 26, 2000, an amended petition was filed adding fifteen additional coroners as parties plaintiff. On May 12, 2000, two additional coroners were added as parties plaintiff. On June 2, 2000, two more coroners were added as parties plaintiff. On August 2, 2000, two more coroners were added as parties plaintiff.
[5] Pavich v. St. Landry Parish Police Jury, 00-0587, p. 10 (La.App. 3 Cir. 2/28/01), 780 So.2d 608, 614, writ denied, 01-0869 (La.12/14/01), 803 So.2d 988.
[6] This appeal was taken from a trial court judgment granting a written motion for a summary judgment in an ordinary proceeding in a civil action. Summary judgments are provided for in Chapter 4 (Written Motions) of Title I (Pleading) of Book II (Ordinary Proceedings) of the Louisiana Code of Civil Procedure. Pursuant to La. C.C.P. art. 852 "(t)he pleadings allowed in civil actions ... shall be in writing and shall consist of petitions, exceptions, written motions, and answers." (Emphasis added.) La. C.C.P. art. 966 providing for written motions for summary judgment states, in part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." (Emphasis added.)

The record on appeal contains no depositions or answers to interrogatories. The pleadings filed by the parties are the petition, the motion for summary judgment and the exceptions. Attached to the petition are affidavits of the coroners stating (1) when they were elected or appointed, (2) when they were sworn in, (3) the date their service as coroner ended if they were no longer in office, (4) the number of months and days they served as coroners from June 1, 1996, and (5) the amount of extra compensation claimed from June 1, 1996, through April 30, 2000. Attached to the coroners' motion for summary judgment is a copy of the judgment of the 19th Judicial District Court in the case of Dawson v. State, docket number 420,821, in which the coroners obtained a judgment against the State for unpaid extra compensation.
The State's memorandum in opposition to the coroners' motion for summary judgment contains the admission that "[d]efendant [State] does not dispute the facts that have been alleged by the Plaintiffs [coroners], nor the procedural history as stated." The State filed an affidavit of James H. Napper, II, the General Counsel for the Louisiana Department of the Treasury, which affidavit contains facts concerning the warrants submitted by the coroners for payment. This affidavit refers to an attached chart showing the warrants submitted by the coroners from December of 1996 until January 2001. This chart is not attached to the affidavit in the record.
Judicial notice has been taken of adjudicative facts in this section of the opinion entitled FACTS and at other places in this opinion. La. C.E. art. 201 et seq. F. Maraist, Evidence and Proof, 19 La. Civ. Law Treatise, § 4.4, pp. 58-60 (1999).
[7] The phrase "if such an appropriation is made" is not underscored and bold-faced in the original or engrossed bill to show it is an addition.
[8] This was the law in effect in 1996. La. C.C. art. 2985 et seq. were revised by Acts 1997, No. 261, effective January 1, 1998. See La. C.C. art. 2989 et seq.
[9] It also is arguable that an employment contract exists between a coroner and the State. An employment contract is a nominate one called a lease of labor. A lease of labor is a synallagmatic contract based on mutual consent by which one party (employee or servant) gives to the other party (employer or master) his labor (services) at a fixed price. La. C.C. arts. 2669, 2673, 2675 and 2746 et seq.; Voitier v. Church Point Wholesale Bev. Co., Inc., 99-1777, p. 5 (La.App. 3 Cir. 4/5/00), 760 So.2d 451, 456, writ denied, 00-1920 (La.9/29/00), 770 So.2d 350; Hawthorn, Waymouth & Carroll v. Johnson, 611 So.2d 645, 654 (La.App. 1 Cir.1992); Guidry v. Freeman, 555 So.2d 588, 591-593 (La.App. 1 Cir.1989). See also La. R.S. 42:1441.2, 42:1441.3 and 13:5108.1.
[10] Pursuant to its statutory authority, the Louisiana State Law Institute divided paragraph A into two parts numbered (1) and (2). See La. R.S. 24:253.
[11] Cf. The Sloop Active v. The United States, 11 U.S. 100, 102, 7 Cranch 100, 3 L.Ed. 282 (1812). Compare with judicial confession; La. C.C. art. 1853; F. Maraist, Evidence and Proof, 19 La. Civ. Law Treatise § 4.5, pp. 61-62 (1999).
[12] This case has an excellent discussion of the history of, and policy reasons for, protecting an elected official's term and salary.
[13] In La. R.S. 33:1559B, the phrase used is "from funds appropriated by the legislature for this purpose." These two phrases obviously mean different things.
[14] Separation of the State's plenary power into three branches is a limitation. This regime provides for a system of "checks and balances" that minimizes the opportunity for an abuse of the State's power.
[15] The treasurer is represented in this action by the Department of Justice, which is part of the executive branch. La. Const. of 1974, art. IV, § 8.
[16] The other two "coroner" cases are Stringer v. State, XXXX-XXXX (La.App. 1 Cir. 11/ /02), 836 So.2d. 704, and Louisiana State Coroners' Association, XXXX-XXXX (La.App. 1 Cir. 11/ /02), 836 So.2d 704. These cases are not consolidated but were heard at the same en banc hearing. They all are being decided on the same day.
[17] In Lord Justice Brooke, Judicial IndependenceIts History in England and Wales, Fragile Bastion, p. 9 (10/1/2002), appears the following:

It was unquestionably the English experience, crystallised in the thinking of Montesquieu and Blackstone, that inspired the founding fathers of the Constitution of the United States when they came to draft Article 3 of that Constitution. This identified a separate judicial power, to be vested in a Supreme Court, and also in inferior courts to be established by Congress, and gave the judges of all those courts two entrenched rights: a right to hold their offices "during good behaviour", and a right to receive compensation for their services at stated times "which shall not be diminished during their continuance in office." It was recognised that immunity from removal from office would not count for very much if the executive branch of government was at liberty to reduce a judge's pay if it did not like his or her judgments.
[18] Because of the methodology used to decide this case, it is unnecessary to consider the doctrine of inherent powers. Note, McCain v. Grant Parish Police Jury: Judicial Use of the Inherent Powers Doctrine to Compel Adequate Judicial Funding, 46 La.L.Rev. 157 (1985); F. Stumpf, Inherent Powers of the Courts: Sword and Shield of the Judiciary (1994); Cf. Bester v. Louisiana Supreme Court Committee on Bar Admissions, 00-1360 (La.2/21/01), 779 So.2d 715, and the cases cited therein. It is also unnecessary to consider whether the coroners' rights to obtain their extra compensation are personal or public for purposes of the protections of the contract clauses of Article I, Section 10(1) of the United States Constitution and La. Const. of 1974, art. I, § 23. Cf. Morial v. Smith & Wesson Corporation, 00-1132 (La.4/3/01), 785 So.2d 1. Finally, the necessity for the exercise of the State's police power to protect the people's health, safety, welfare and morals is not at issue in this case. Morial, 00-1132, pp. 17-18, 785 So.2d at 15.