932 So.2d 687 (2006)
Sharvonne JOHNSON
v.
ORLEANS PARISH SCHOOL BOARD.
No. 2005-CA-1038.
Court of Appeal of Louisiana, Fourth Circuit.
May 3, 2006.
*688 John L. Young, Law Offices of John L. Young, New Orleans, Counsel for Sharvonne Johnson.
Michael B. Forbes, Hammond, Counsel for Sharvonne Johnson.
Philip A. Costa, Costa Law Firm (APLC), New Orleans, Counsel for Defendant/Appellant.
(Court Composed of Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE, and Judge MAX N. TOBIAS, Jr.)
MAX N. TOBIAS JR., Judge.
In this workers' compensation case, the employer, the Orleans Parish School Board ("OPSB"), appeals the judgment of the Office of Workers' Compensation ("OWC") rendered in favor of Sharvonne Johnson ("Johnson"). For the reasons assigned, we affirm in part and reverse in part.
*689 On 13 January 2000, Johnson was involved in an automobile accident while operating a school bus in the course of her employment with the OPSB. Johnson began receiving workers' compensation benefits in January 2000.
Johnson, through her attorney, John L. Young, filed a tort suit in the Civil District Court for the Parish of Orleans against the driver of the other vehicle involved in the accident. The OPSB intervened in that action. Johnson received a settlement check from the third-party tortfeasor's insurer for the policy limits of $25,000.00. The OPSB did not endorse the check. In response thereto, Johnson filed a Disputed Claim for Compensation with the OWC on 13 May 2003.[1]
Johnson's workers' compensation benefits were terminated on 3 October 2003, following the issuance of a "Release to Return to Work" issued to Johnson on 1 October 2003. At trial, the parties stipulated that (a) Johnson was involved in a work-related accident, (b) her average weekly wage was $332.40 at the time of the accident, and (c) the OPSB paid in excess of $40,096 in indemnity benefits to Johnson and $55,252.01 in medical benefits for Johnson.
After considering the stipulations and hearing testimony from Johnson, the trial court rendered judgment decreeing: (1) Johnson did not carry her burden of proof of entitlement to temporary total disability benefits ("TTD"); (2) the OPSB carried it's burden of proof through medical records to establish that Johnson was able to perform sedentary work; (3) the OPSB did not timely inform Johnson of any available job positions so that she could apply for appropriate work; (4) Johnson was entitled to supplemental earning benefits ("SEB") at the full TTD rate, from the date of indemnity termination in October 2003 and continuing; (5) Johnson's attorney in the tort action, John L. Young, was entitled to an attorney's fee of $8,333.00 (one-third of the $25,000.00 settlement) and to reimbursement for all medical expenses paid by him; (6) the OPSB was ordered to pay for the physical therapy and the updated MRI recommended by Johnson's treating physician; and, (7) the OPSB was ordered to pay for Johnson's vocational rehabilitation. The OPSB appealed, asserting two assignments of error: (a) the trial court erred in not properly applying the provisions of La. R.S. 23:1103 with regard to the award of attorney's fees in the tort action or La. R.S. 23:1102 concerning the third-party settlement; and (b) the trial court erred in finding that Johnson was entitled to SEB.
We review the judgment of the OWC applying a "manifest error/ clearly wrong" standard of review. Dean v. Southmark Const., 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117.

I.
The OPSB asserts that because it paid in excess of $95,000.00 to Johnson in benefits, it is entitled to the entire $25,000.00 settlement proceeds in accordance with La. R.S. 23:1103(A)(1), which states that in the event an employee recovers damages against a third-party tortfeasor, "the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed *690 solely in his favor." La. R.S. 23:1103(C)(1) further provides that "the intervenor shall only be responsible for a share of the reasonable legal fees and costs incurred by the attorney retained by the plaintiff, which portion shall not exceed one-third of the intervenor's recovery for prejudgment payments of prejudgment damages."
Johnson counters that the trial court correctly awarded Mr. Young an attorney's fee arising out of the tort suit because he was solely responsible for obtaining the settlement and because counsel for the OPSB did not provide any assistance in procuring the third-party's funds. Johnson concedes that she is not personally entitled to any of the settlement proceeds, but argues that her attorney in the tort action is entitled "Moody fees."[2]
While we agree that Mr. Young may be entitled to an attorneys' fees for his work in the tort action, we find that the OWC does not have jurisdiction to award "Moody fees" pursuant to La. R.S. 23:1103(C). Fleniken v. Safeway Transp., Inc., 02-2389 (La.App. 1 Cir. 7/2/03), 859 So.2d 50.
La. R.S. 23:1103(C)(1) provides:
If either the employer or employee intervenes in the third party suit filed by the other, the intervenor shall only be responsible for a share of the reasonable legal fees and costs incurred by the attorney retained by the plaintiff, which portion shall not exceed one-third of the intervenor's recovery for prejudgment payments or prejudgment damages. The amount of the portion of attorney fees shall be determined by the district court based on the proportionate services of the attorneys which benefited or augmented the recovery from the third party. The employee as intervenor shall not be responsible for the employer's attorney fees attributable to postjudgment [sic] damages nor will the employer as intervenor be responsible for the attorney fees attributable to the credit given to the employer under Subsection A of this Section. Costs shall include taxable court costs as well as the fees of experts retained by the plaintiff. The pro rata share of the intervenor's costs shall be based on intervenor's recovery of prejudgment payments or prejudgment damages. [Emphasis added.]
In Fleniken, the court stated:
The plain language in La. R.S. 23:1103(C) requires that attorney fees must be determined by the district court. The word "shall" is mandatory and the word "may" is permissive. La. R.S. 1:3. The phrase "[a]ttorney fees shall be determined by the district court" is mandatory language. In construing legislative enactments, we must assume that the Legislature intended every word, phrase, and clause to have some meaning and that none was inserted by accident. Consequently, we must construe every provision of a statute in such a manner so as to give it some effect. Hoag v. State ex rel. Kennedy, 01-1076, p. 13 (La.App. 1 Cir. 11/20/02), 836 So.2d 207, 219, writ denied, 02-3199 (La.3/28/03), 840 So.2d 570; citing Elevating Boats, Inc. v. St. Bernard Parish, 00-3518, p. 18 (La.9/5/01), 795 So.2d 1153, 1166. And so construing, it is clear that the Office of Workers' Compensation *691 lacks jurisdiction in this regard.
Fleniken argues that OWC has jurisdiction because of the language in La. R.S. 23:1310.3(E) provides OWC with exclusive jurisdiction over claims "arising out of this Chapter." The Moody fee claim, however, arises from the tort litigation and does not "arise out of this Chapter" as contemplated in La. R.S. 23:1310.3. The statutory grant of jurisdiction to the Office of Workers' Compensation in La. R.S. 23:1310.3(E) has been specifically limited by the language of the amendment to Article V, § 16(A) of the Louisiana Constitution, which gives the WCJ only as much jurisdiction as this constitutional amendment authorizes. Albe v. Louisiana Workers' Compensation Corporation, 97-0581, p. 6 (La.10/21/97), 700 So.2d 824, 827.

Fleniken, 02-2389, p. 3, 859 So.2d at 52.
Applying the holding of Fleniken to the present case, we find that the OWC lacked jurisdiction to award "Moody fees." Per La. R.S. 23:1103(C)(1), the award of such fees falls within the exclusive jurisdiction of the district court. Accordingly, we conclude that the OWC erred in awarding an attorney's fees to Mr. Young.
The OPSB also argues that the OWC judge failed to properly apply the provisions of La. R.S. 23:1102 as it pertains to Johnson's settlement of the tort action without prior consent of her employer. La. R.S. 23:1102(C)(1) states:
When a suit has been filed against a third party defendant in which the employer or his insurer has intervened, if the third party defendant or his insurer fails to obtain written approval of the compromise from the employer or his insurer at the time of or prior to such compromise and the employee fails to pay to the employer or his insurer the total amount of compensation benefits and medical benefits out of the funds received as a result of the compromise, the third party defendant or his insurer shall be required to reimburse the employer or his insurer to the extent of the total amount of compensation benefits and medical benefits previously paid to or on behalf of the employee to the extent said amounts have not been previously paid to the employer or his insurer by the employee pursuant to the provisions of Subsection B of this Section. Notwithstanding such payment, all rights of the employer or his insurer to assert the defense provided herein against the employee's claim for future compensation or medical benefits shall be reserved.
In response, Johnson argues that no settlement has ever been perfected and the OPSB's rights have not been compromised. More particularly, Johnson maintains that she has never received any funds and has never signed a release. At the outset, we note from our review of the record before us that the issue of Johnson's alleged failure to obtain consent for the settlement was never raised by the OPSB before the OWC and thus was never addressed by the OWC judge. We find no evidence in the record regarding the OPSB's consent or lack of consent to the third-party settlement. The only argument presented to the OWC was the OPSB's entitlement to the full $25,000.00 settlement due to the fact that it paid more than $95,000.00 in benefits.
As a general rule, this court will not consider an issue raised for the first time before us and which was not pleaded, urged, or addressed in the court below. Johnson v. State, 02-2382, p. 3 (La.5/20/03), 851 So.2d 918, 921. Accordingly, we decline to consider for the present *692 the issue concerning the alleged lack of consent for the settlement.

II.
The purpose of SEB is to compensate the injured employee for the wage-earning capacity lost as a result of the injury sustained in a work-related accident. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993). La. R.S. 23:1221(3)(a) mandates that an employee is entitled to SEB if he or she sustains a work-related injury resulting in an inability to earn 90% or more of his or her average pre-injury wage. An employee seeking SEB must initially prove that the injury resulted in his or her inability to earn that amount. Chaisson v. Cajun Bag & Supply Co., 97-1225, p. 16 (La.3/4/98), 708 So.2d 375, 384. This burden must be met by a preponderance of the evidence. Id. After the employee satisfies the above-described initial showing, the burden shifts to the employer. Seal v. Gaylord Container Corp., 97-0688, p. 8 (La.12/2/97), 704 So.2d 1161, 1166. Once the burden shifts, the employer "must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region." Id., citing La. R.S. 23:1221(3)(c)(i).
In determining whether Johnson has established a prima facie case, the trial court may and should take into account all those factors that might bear on an employee's ability to earn a wage. Cannedy v. Yarborough, 02-0728, p. 3 (La.App. 1 Cir. 6/27/03), 858 So.2d 504, 506, citing Daigle v. Sherwin-Williams Company, 545 So.2d 1005, 1007 (La.1989). Whether a claimant's injury prevents him or her from obtaining employment earning 90% of the pre-injury wage is a question of fact. Thus, an appellate court may not set aside the workers' compensation judge's findings in this regard absent a finding of manifest error or unless the findings are clearly wrong. Smith v. J.E Merit Constructors, Inc., 01-2824, p. 6 (La.App. 1 Cir.11/08/02), 835 So.2d 749, 754.
Upon review of the record in the case at bar, we do not find that the OWC judge was clearly wrong in her finding that Johnson was entitled to SEB. As a result of the accident, Johnson was treated at the East Jefferson Hospital emergency room for complaints of right arm, right shoulder, and low back pain. Thereafter, Johnson treated with various physicians such as Robert L. Mimeles, M.D. (an orthopedist), Warren L. Gottsegen, M.D. (a vascular surgeon), R. Hugh Fleming, M.D., Kenneth E. Vogel, M.D. (a neurosurgeon), and D.L. Kewalramani, M.D. (Johnson's treating physician). Johnson underwent neurosurgical evaluation by Dr. Vogel from 26 June 2001 through 30 April 2002. Dr. Vogel performed a right cervical facet arthrogram on 3 October 2001, which reproduced symptoms on the right with injections at the C3-4, C4-5, and C6-7 levels of the cervical spine. Johnson underwent a right cervical medial branch neurotomy on 24 January 2002. When he last saw Johnson on 16 April 2002, Dr. Vogel assigned a 5% whole body medical impairment. Johnson treated with Dr. Kewalramani from January 2001 through the date of trial. Dr. Kewalramani opined that Johnson could not return to her previous position as a school bus driver and that she could only return to sedentary work. Thus, based on the evidence presented and the degree of work restrictions placed on her, we do not find that the OWC judge was clearly wrong in finding that Johnson was unable to earn 90% of her pre-injury wage.
*693 It is clear from the reasons for judgment that the OWC judge determined that the OPSB failed to discharge its burden under La R.S. 23:1221(3)(a), by not providing Johnson with a list of available jobs in a timely fashion. We do not find that this factual determination was manifestly erroneous.
On 23 May 2003, the OPSB's vocational rehabilitation consultant, Hayward Johnson, sent Johnson a list of four possible job positions. However, Dr. Kewalramani did not approve the positions until 16 June 2003. Johnson's testimony (that she was never notified of the jobs approved by Dr. Kewalramani) was not refuted by the OPSB. Moreover, the OPSB provided no evidence that the positions were still available when Dr. Kewalramani approved them. Accordingly, we find no error in the OWC judge's ruling regarding Johnson's entitlement to SEB.
For the foregoing reasons, we reverse the OWC's award of attorney's fees to Mr. Young because an award of "Moody fees" falls within the jurisdiction of the district court. In all other respects, the 26 October 2004 judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Reference is made in the record on appeal to another Disputed Claim for Compensation filed on 29 September 2003. However, that claim form is not found in the record before us.
[2] In Moody v. Arabie, 498 So.2d 1081 (La. 1986), the case from which the term "Moody fees" is derived, the Louisiana Supreme Court set out a rule when an attorney representing an injured plaintiff could recover an attorney's fee and costs from amounts that would ordinarily be due to an intervenor employer. The holding of the case was codified in La. R.S. 23:1103(C).