HANS J. LILJEBERG, Judge.
|2Pefendants, Metropolitan Development Center and the State of Louisiana, appeal the worker’s compensation court’s judgment dated February 27, 2012, in favor of claimant, Geraldyn Wilson. For the following reasons, we reverse and vacate the judgment.

FACTS AND PROCEDURAL HISTORY

On February 19, 2005, claimant was employed by Metropolitan Development Center as a nursing assistant when she allegedly fell and sustained injuries to her left knee and left hip. She was treated by Dr. Robert Shackleton, and he performed arthroscopic surgery on her left knee on April 4, 2005. She continued to treat with Dr. Shackleton for at least three years after the surgery. Medical records admitted into evidence reveal that during his treatment of claimant, Dr. Shackleton opined in June of 2006 and August of 2008 that claimant could work at a sedentary job.
Defendants obtained surveillance of Ms. Wilson in October and November of 2009. The surveillance DVD shows Ms. Wilson on different occasions walking unaided without any apparent difficulty, getting in and out of a car without any difficulty, and *264 even wearing heels.[1] Defendants apparently forwarded a copy of this surveillance to Dr. Shackleton. The medical records of Dr. Shackleton admitted into evidence contain the following notation, dated April 14, 2010:
I was provided with a DVD that was surveillance of Mrs. |sWilson for the dates of October 23, 2009, October 31, 2009, November 11, 2009, November 12, 2009, and November 13, 2009. On each of these dates, she was observed walking without any assistance. She had no limp. She was walking around, [as] though nothing was wrong with her. This is in direct contrast [to] when she comes in the office either on crutches or using a walker complaining of excruciating pain in her legs and inability to walk without assistance. Her complaints in the clinic and observation in the clinic is vastly different from the surveillance. (Emphasis in original).
Thereafter, in his August 25, 2010 report, Dr. Shackleton opined that Ms. Wilson was able to return to work without restrictions. He reiterated his. opinion that Ms. Wilson could return to work with no restrictions in his November 11, 2010 report.
Defendants began paying weekly indemnity benefits to Ms. Wilson after the accident. However, they stopped paying benefits to Ms. Wilson in July of 2010. On October 14, 2010, claimant filed a Disputed Claim for Compensation, asserting that her wage benefits should not have been terminated, that her worker’s compensation rate is incorrect, and seeking penalties, attorney fees, and interest. Trial of the matter was held on February 2, 2012.
At trial, Ms. Wilson testified that on February 19, 2005, while working as a nursing assistant at Metropolitan Development Center, she went into a patient’s room in which “[t]he bathroom had run over” and she slipped and fell in some water. She was taken to Meadowcrest Hospital by ambulance. Ms. Wilson testified that she hurt her buttocks and her back, and her leg was in excruciating pain.
Ms. Wilson stated that she treated with Dr. Shackleton for approximately three years and she last saw him in 2011. She testified that he performed surgery on her left knee, but it did not help and her left leg still hurts. According to Ms. |4Wilson, after the surgery, her left leg “would just go out” without any warning, and she would fall. She claims that she fell as late as three weeks before trial.
Ms. Wilson testified that no doctor has ever told her not to walk or drive. She stated that as of the date of trial, her left knee is always in pain, and she has pain walking and getting in and out of the car. However, her pain is not the same every day. She also stated that she cannot walk long distances without resting.
According to Ms. Wilson, she would love to work, but no one has ever tried to get her a desk job. Ms. Wilson testified that she is not sure if she could work five days a week, but she could try. She stated that when.she was terminated from her job in July of 2005, she did not appeal that decision. She admitted that Dr. Shackleton told her she could probably return to work at a desk job, but she has never applied for any desk job or even looked for a job. Ms. Wilson further admitted that she has not worked anywhere since she injured her leg in February of 2005.
Several exhibits were admitted into evidence at trial, including Ms. Wilson’s medical records and the deposition of Dr. *265 Shackleton. In his deposition taken August 16, 2011, Dr. Shackleton testified that he treated Ms. Wilson for her left knee injury, and he performed surgery on her left knee on April 4, 2005. He reiterated his opinion that Ms. Wilson was able to return to full-duty work, as stated in his August 25, 2010 and November 11, 2010 reports. He further stated that by finding Ms. Wilson was able to return to work with no restrictions, he was indicating that he found her to be at maximum medical improvement.
Although Dr. Shackleton admitted that Ms. Wilson was not seen in his clinic close to the dates of the surveillance, he stated that when he did see her, she complained of excruciating pain in her legs and the inability to walk without assistance, which was vastly different from what he saw on the surveillance DVD. |fiHe noted that when she came to his office, Ms. Wilson used crutches or a walker, would be “moaning and groaning,” and could barely walk down the hall. He testified that he would expect for Ms. Wilson’s pain medication to allow her to perform more activities, but not such a dramatic change as displayed in the surveillance. He further stated that Ms. Wilson lost credibility with him because the surveillance DVD was very different from what she demonstrated in his office. He also opined that patients can have good and bad days, but not with changes this dramatic.
At the conclusion of trial, the worker’s compensation judge took the matter under advisement. Thereafter, on February 27, 2012, the worker’s compensation judge rendered a judgment in claimant’s favor, ordering defendants to pay to Ms. Wilson supplemental earnings benefits in the amount of $1,057.86 per month, retroactive to July 12, 2010, and “continuing until such time as modification is appropriate,” along with legal interest on all past due supplemental earnings benefits. The judgment further ordered defendants to institute vocational rehabilitation services for Ms. Wilson, to pay $8,000.00 in penalties and $10,000.00 in attorney fees for the arbitrary and capricious termination of benefits, and to approve Ms. Wilson’s request to choose a new treating orthopedic surgeon, reserving defendants’ right to have claimant examined by its own choice of physician. Defendants, Metropolitan Development Center and the State of Louisiana, appeal this judgment.

LAW AND DISCUSSION

On appeal, defendants set forth five assignments of error. In their first assignment of error, defendants claim that the trial court erred in ordering them to pay Ms. Wilson supplemental earnings benefits in the amount of $1,057.86 per month retroactive to July 12, 2010, and “continuing until such time as modification |fiis appropriate.” They contend that Dr. Shackleton found that Ms. Wilson could return to full-duty work with no restrictions in his August 2010 report, and his medical testimony was un-refuted. They further note that claimant has never attempted to return to employment of any kind since the accident and that she has not met her burden of proving that she cannot earn ninety percent (90%) of her pre-injury wages.
Ms. Wilson responds that the worker’s compensation judge found Ms. Wilson to be credible and that the findings of the worker’s compensation judge cannot be overturned absent manifest error. She further asserts that the primary defense of defendants is the surveillance DVD totaling ten minutes over a five-day period, which is insignificant, as found by the worker’s compensation judge.
Factual determinations in a worker’s compensation case, including whether the employee has discharged her burden of proof, are subject to the mani *266 fest error or clearly wrong standard of appellate review. Polkey v. Landworks, Inc.., 10-718, p. 3 (La.App. 1 Cir. 10/29/10), 68 So.3d 540, 544; Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. Under this standard, an appellate court may only reverse a worker’s compensation judge’s factual findings if it finds from the record that a reasonable factual basis for the finding does not exist, or that examination of the entire record reveals that the finding is clearly erroneous. Stobart v. State, Department of Transp. and Development, 617 So.2d 880, 882 (La.1993).
Entitlement to supplemental earnings benefits is governed by LSA-R.S. 23:1221(3). Edmondson v. PCA International, American Studios, 02-1989, p. 3 (La.App. 1 Cir. 7/2/03), 859 So.2d 31, 33. The purpose of supplemental earnings benefits is to compensate the injured employee for the wage-earning capacity lost as a result of the injury sustained in the work-related accident. Pinkins v. Cardinal 17Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993); Johnson v. Orleans Parish School Board, 05-1038, p. 6 (La.App. 4 Cir. 5/3/06), 932 So.2d 687, 692.
In order to recover supplemental earnings benefits, the employee must first prove by a preponderance of the evidence that she is unable to earn wages equal to ninety percent (90%) or more of the wages she earned before the accident. LSA-R.S. 23:1221(3); Seal v. Gaylord Container Carp., 97-688 (La.12/2/97), 704 So.2d 1161, 1166; Hughes v. New Orleans Saints, OS-712, p. 8 (La.App. 5 Cir. 2/27/06), 924 So.2d 1086, 1091, writ denied, 06-1008 (La.6/23/06), 930 So.2d 980. In determining if an injured employee has met her initial burden of proving entitlement to supplemental earnings benefits, the reviewing court must examine all evidence that bears upon the employee’s inability to earn ninety percent or more of his pre-injury wages. Quave v. Airtrol, Inc., 11-1182, p. 5 (La.App. 1 Cir. 6/8/12), 93 So.3d 733, 737. An injured worker’s testimony that she is no longer able to return to her pre-injury employment, without more, is insufficient to prove entitlement to supplemental earnings benefits. Forbes v. Metropolitan Developmental Center, 09-901, p. 12 (La.App. 5 Cir. 3/9/10), 35 So.3d 377, 384.
In the present case, Ms. Wilson sustained an injury to her left knee and hip during a work-related accident on February 19, 2005. Dr. Shackleton performed surgery on her left knee in April of 2005, and she continued to see Dr. Shackleton for treatment.
Defendants paid indemnity benefits to Ms. Wilson from the time of the accident until July 2010, which was after they obtained surveillance of Ms. Wilson walking without assistance or difficulty and even wearing heels on one occasion. Dr. Shackleton testified that the surveillance DVD of Ms. Wilson walking unaided and without difficulty was vastly different from what he saw when she came to his clinic. Our review of the surveillance DVD reveals that Ms. Wilson did indeed | ^appear to walk and get in and out of a car on different occasions without any assistance or apparent difficulty, though her medical records indicate that she had difficulty walking whenever she attended her appointments.
In her reasons for judgment, the worker’s compensation judge found Ms. Wilson to be a credible witness. She further noted that the surveillance DVD contained less than ten minutes of footage over five days, and she apparently found it to be insignificant.
A thorough review of the entire record reveals that Ms. Wilson did not present *267 sufficient evidence to meet her burden of proving that she is unable to earn ninety percent (90%) of her pre-injury wages. As stated above, an injured worker’s testimony that she can no longer work at her pre-injury employment, without more, is insufficient to prove entitlement to supplemental earnings benefits. Thus, it is immaterial that the worker’s compensation judge’s found Ms. Wilson credible and the video footage insignificant, considering the lack of evidence to support Ms. Wilson’s claim.
In his reports of June 2, 2006, and August 8, 2008, Dr. Shackleton opined that claimant could perform sedentary work. In August 25, 2010, he opined that she could return to full-duty work without restrictions. Ms. Wilson did not present testimony or evidence from any doctor or other witness to establish that she could not work or that she could not earn at least ninety percent (90%) of her pre-inju-ry wages. Further, although Ms. Wilson stated that she wanted to return to work, there was no evidence that she had even attempted to return to work in any capacity since the 2005 accident. In fact, at trial, Ms. Wilson stated that she is not sure if she could work five days a week, but she admitted that she has not applied for any jobs whatsoever and has not even looked for any jobs since the accident.
^Considering the testimony and evidence in the record before us, we find that claimant did not meet her burden of proving by a preponderance of the evidence that she is entitled to supplemental earnings benefits. Accordingly, the worker’s compensation judge was manifestly erroneous in awarding supplemental earnings benefits to Ms. Wilson, and we reverse and vacate this award.
In their second assignment of error, defendants contend that the trial court erred in ordering defendants to pay legal interest on all past due supplemental earnings benefits. Considering our finding that no supplemental earnings benefits are owed to Ms. Wilson, clearly there can be no legal interest due.
In their third assignment of error, defendants assert that the trial court erred in ordering defendants to institute vocational rehabilitation services on Ms. Wilson’s behalf, pursuant to LSA-R.S. 28:1226.
LSA-R.S. 23:1226(A) provides that when a work-related injury precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. The purpose of LSA-R.S. 23:1226 is to educate and increase the job marketability of employees who cannot return to their former positions. Canizaro v. Tangipahoa Parish School System, 02-1913, p. 5 (La.App. 1 Cir. 8/20/03), 853 So.2d 741, 745. However, this does not include employees who are able to return to work but refuse to do so. Id.
In the present case, we first note that Ms. Wilson’s Disputed Claim for Compensation does not allege a dispute regarding vocational rehabilitation or failure of defendants to provide vocational rehabilitation. See Bums v. Interstate Brands Corp., 09-705, p. 7 (La.App. 3 Cir. 2/3/10), 30 So.3d 271, 276. Further, even if this claim had been properly pled, the record does not show that she cannot linearn wages that are equal to her pre-injury wages, as to entitle her to vocational rehabilitation.
Considering all of the evidence before us, along with the applicable law, we find that Ms. Wilson is not entitled to vocational rehabilitation. Accordingly, we reverse and vacate the worker’s compensation judgment ordering defendants to institute vocational rehabilitation services for Ms. Wilson.
*268 In their fourth assignment of error, defendants argue that the trial court erred in ordering defendants to pay Ms. Wilson $8,000.00 in penalties and $10,000.00 in attorney fees for the arbitrary and capricious termination of benefits, pursuant to LSA-R.S. 23:1201(A)(1).
The statutory provisions permitting the assessment of penalties and attorney fees for nonpayment of worker’s compensation benefits are penal in nature and must be strictly construed. Bordelon v. Cox Communications, 05-40, p. 7 (La. App. 5 Cir. 5/31/05), 905 So.2d 1107, 1112, writ denied, 05-1759 (La.1/27/06), 922 So.2d 549; Taylor v. Hollywood Casino, 41,196, p. 8 (La.App. 2 Cir. 6/28/06), 935 So.2d 293, 299. An employee’s right to receive compensation benefits will be deemed reasonably controverted if the employer or insurer had a reasonable basis for believing that compensation was not due. Terro v. WMCO, Inc., 619 So.2d 639, 644-645 (La.App. 3 Cir.1993).
In the present case, defendants terminated payment of worker’s compensation benefits to claimant after obtaining the surveillance DVD and Dr. Shackleton’s opinion that it showed vastly different abilities than Ms. Wilson demonstrated in his office. Considering this evidence and our finding that claimant is not entitled to supplemental earnings benefits, we find that defendants were not arbitrary and capricious in terminating her benefits. Accordingly, we reverse and vacate the award of penalties and attorney fees in the February 27, 2012 judgment.
|T1In their fifth and final assignment of error, defendants claim that the worker’s compensation judge erred in ordering defendants to approve Ms. Wilson’s request to choose a new treating orthopedic surgeon, reserving defendants’ right to have Ms. Wilson examined by their own choice of physician, pursuant to LSA-R.S. 23:1121(A). We agree.
A claimant is not entitled to treatment by a new choice of orthopedist simply because the original choice of orthopedist released her to return to work. Cheatham v. Luberski, Inc., 43,603, p. 6 (La.App. 2 Cir. 9/17/08), 996 So.2d 373, 376. As with a claim for medical expenses under LSA-R.S. 23:1203, the claimant must show that a choice of a new treating physician is medically necessary. Id.; Captain v. Citgo Petroleum Corp., 06-481, p. 3 (La.App. 3 Cir. 9/27/06), 940 So.2d 731, 735.
In the present case, Ms. Wilson did not request a change of treating physician in her Disputed Claim for Compensation. Further, the record before us does not contain any evidence indicating that it is medically necessary for claimant to choose a new treating physician. Further, we note that, in his deposition, Dr. Shackleton opined that Ms. Wilson has reached maximum medical improvement. Accordingly, we find that the worker’s compensation judge erred in ordering defendants to approve Ms. Wilson’s request to choose a new treating orthopedic surgeon, and we reverse this ruling.

DECREE

For the foregoing reasons, we reverse and vacate the February 27, 2012 judgment of the worker’s compensation court in its entirety.

REVERSED AND VACATED

.. Alvin Ronquille, a private investigator who filmed some surveillance of Ms. Wilson, testified at trial to authenticate the surveillance DVD.