# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 15-747

VANESSA WEAVER

VERSUS

LOUISIANA WHOLESALE DRUG COMPANY, INC., ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT #4
PARISH OF ST. LANDRY, NO. 13-06696
ADAM C. JOHNSON, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, James T. Genovese, and David Kent Savoie, Judges.

SAVOIE, J., dissents and assigns reasons.

AFFIRMED.

Stephen Mark Morrow, Sr.
James S. Gates
Morrow, Gates & Morrow, L.L.C.
P. O.  Drawer 219
Opelousas, LA 70571-0219
Telephone:  (337) 942-6529
COUNSEL FOR:
    Plaintiff/Appellee - Vanessa Weaver

Kirk Lindsay Landry
Keogh, Cox & Wilson, Ltd.
P. O. Box 1151
Baton Rouge, LA 70821
Telephone:  (225) 383-3796
COUNSEL FOR:
    Defendants/Appellants - Continental Casualty Company and Louisiana
    Wholesale Drug Company, Inc.

**THIBODEAUX, Chief Judge.**

Louisiana Wholesale Drug Company, Inc., ("LWD") and its insurer, Continental Casualty Company, (collectively "Appellants") appeal a judgment of the Office of Workers' Compensation awarding former LWD employee Vanessa Weaver supplemental earning benefits ("SEB") in the amount of $273.33 per week. While working at LWD, Ms. Weaver fell and hit her right wrist on a pipe, injuring that wrist. She continued to work with restrictions until July 12, 2013, when Ms. Weaver claims that her supervisor at LWD required her to perform duties beyond her physical capabilities at the time. LWD disputes this claim and contends that Ms. Weaver voluntarily left employment with LWD without giving a reason.

After a year and a half passed without Appellants paying Ms. Weaver any wage benefits, Ms. Weaver filed a Disputed Claim for Compensation. She alleged in her claim that Appellants had wrongfully failed to pay her benefits and that Appellants' actions were arbitrary and capricious, entitling Ms. Weaver to penalties and attorney fees. Appellants argued that Ms. Weaver was not entitled to SEB since she was working full time at her full wage after she was injured, and left employment voluntarily and not because of her injury. Based on the medical records in evidence and Ms. Weaver's testimony, which the workers' compensation judge ("WCJ") specifically found credible, the WCJ ruled that Ms. Weaver had a valid claim for SEB. However, the WCJ declined to award penalties and attorney fees. From that judgment, Appellants filed a timely appeal. Ms. Weaver answers that the WCJ correctly ruled that she was entitled to SEB, but erred in denying her penalties and attorney fees. For the following reasons, we

affirm the judgment of the trial court awarding Ms. Weaver SEB and denying penalties and attorney fees.

## I.

## <u>ISSUES</u>

There are three issues before the Court:

1.  whether the trial court erred in finding that Ms. Weaver was entitled to SEB and shifting the burden of proof to Appellants;

2.  whether Appellants proved there was a suitable job available to Ms. Weaver that she was physically capable of performing; and

3.  whether the trial court erred in declining to award Ms. Weaver penalties and attorney fees.

## II.

## <u>FACTS AND PROCEDURAL HISTORY</u>

Vanessa Weaver worked as an order filler at LWD for three-and-a-half years, ending in July 2013. Her job duties included filling prescription orders for pharmacists. Before her job at LWD, Ms. Weaver worked as a police dispatcher, a clerk at Dollar General, and was in the military. Prior to this suit, she had never made a claim for workers' compensation benefits or filed a lawsuit. She was well-respected at LWD and never received any complaints about her job performance.

Ms. Weaver was injured while at work at LWD on March 28, 2013. She dove to stop a box of glass bottles from falling and hit her right wrist on a pipe. She was taken to an emergency room where doctors noted pain and swelling in the right wrist. She returned to work but was placed on restrictions by her

2

doctor at The Family Clinic: first, she could work but not use the injured part of her hand; and starting on May 14, 2013, she could work only with the use of a neoprene splint. In the weeks after the injury occurred, Ms. Weaver was treated by a general practice physician at The Family Clinic and a physical therapist at Lafleur Therapy Center. Records from The Family Clinic as recent as November 11, 2013, note that Ms. Weaver complained of swelling, burning, and numbness in her wrist. Records from Lafleur Therapy Center note on May 9, 2013, that Ms. Weaver reported pain in her wrist at a level of 6 out of 10 when she was active, and at 2 out of 10 at rest. There was also a "palpable click" in her wrist.

Ms. Weaver continued to work with restrictions for four months. Though her job required her to lift boxes of 15 to 20 pounds, her employer accommodated her and she received assistance from coworkers in lifting boxes. The parties dispute what happened on the last day Ms. Weaver came into work. Ms. Weaver claims that on July 12, 2013, her employer insisted that she lift a box beyond her physical capabilities, given the restrictions imposed by her doctor. On that day, Ms. Weaver left her job, though her employment was never formally terminated. LWD, on the other hand, claims that Ms. Weaver voluntarily walked out on her job without giving a reason. LWD asserts that there is no evidence that Ms. Weaver was unable to perform her duties and points out that she was making the same wage before and after her accident.

At the hearing on Ms. Weaver's claim, the WCJ heard testimony from Troy Meche, another LWD employee, and Ms. Weaver. Ms. Weaver testified that throughout her working life, she had always used both hands in performing her job duties. The WCJ also considered medical records from The Family Clinic and Lafleur Therapy Center.

After considering testimony and the medical records, the WCJ found that Ms. Weaver had met her burden to prove entitlement to SEB. Based on the WCJ's observations of "Ms. Weaver's gestures, tone of voice, responses and reactions to questions, and overall demeanor," the WCJ specifically found Ms. Weaver credible. The WCJ denied Ms. Weaver's claims for penalties and attorney fees. Appellants assert on appeal that the WCJ committed legal error by shifting the burden of proof to Appellants before Ms. Weaver had shown entitlement to SEB. Appellants also argue that even if Ms. Weaver showed she was entitled to SEB, Appellants were not required to pay since there was a suitable job available for Ms. Weaver. Ms. Weaver argues that the WCJ was correct in holding that she was entitled to SEB, but erred in denying her request for penalties and attorney fees.

III.

**LAW AND DISCUSSION**

At the outset, Appellants argue that the WCJ committed legal error by shifting the burden to Appellants too early, and that the judgment should be subject to a de novo review. However, analysis of an employee's claim for SEB is necessarily based on the facts and circumstances of the case. *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/96), 696 So.2d 551 (citing *Daigle v. Sherwin-Williams Co.*, 545 So.2d 1005 (La.1989)). The findings of the WCJ are, therefore, subject to the manifest error-clearly wrong standard of review. *Id*. In *Banks*, the Louisiana Supreme Court elaborated on the application of that standard:

> In applying the manifest error-clearly wrong standard,
> the appellate court must determine not whether the trier

4

of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Freeman* [*v. Poulan/Weed Eater*], 93-1530 [(La. 1/14/94),] 630 So.2d [733]; *Stobart v. State*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d at 882. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

*Id.* at 556.

### Entitlement to SEB

Appellants first argue that Ms. Weaver did not prove that she was entitled to SEB, so the trial court erred in shifting the burden of proof to Appellants to show that another suitable job was available. SEB are available when an injury renders an employee unable to earn at least 90% of wages at the time of the injury. La.R.S. 23:1221(3)(a)(i). In order to show entitlement to SEB, an injured employee must show, by a preponderance of the evidence, "that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case." *Banks*, 696 So.2d at 556.

Here, the WCJ found, based on the facts before him, that Ms. Weaver was unable to earn at least 90% of her income after she was injured while working for LWD. The record on appeal shows that Ms. Weaver's use of her right hand was restricted from the time of her injury until at least after this lawsuit was filed. Likewise, Ms. Weaver's medical records show that she had continuing pain in her wrist and a palpable click. This demonstrates that Ms. Weaver lacked full use of her right hand. Ms. Weaver testified that she had always used both hands in her

5

employment. The WCJ specifically found Ms. Weaver to be a credible witness. In hearing Ms. Weaver's testimony, the WCJ was able to observe Ms. Weaver's gestures, tone of voice, responses to questions, and overall demeanor. Moreover, the record shows that Ms. Weaver was a model employee: she had never been fired from a job, nor had complaints about her job performance. This is the first occasion she has filed a workers' compensation claim, or a lawsuit of any kind. On these grounds, the WCJ made his determination of credibility. Based on the evidence and Ms. Weaver's credibility, it was reasonable for the WCJ to infer that Ms. Weaver was unable to work with only her left hand on any job, and so her injury prevented her from earning at least 90% of her pre-injury income. "[R]easonable evaluations of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel that its own inferences and evaluations are as reasonable." *Lee v. Heritage Manor of Bossier City*, 41,828, p. 8 (La.App. 2 Cir. 3/14/07), 954 So.2d 276, 282, *writ denied*, 07-736 (La. 5/18/07), 957 So.2d 157. Accordingly, we find no manifest error in the WCJ's finding.

We also note that the WCJ did not rely solely on the credibility of Ms. Weaver's testimony. It is true that "[a]n injured worker's testimony that she is no longer able to return to her pre-injury employment, without more, is insufficient to prove entitlement to supplemental earnings benefits." *Wilson v. Metro. Dev. Ctr.*, 12-487, p. 7 (La.App. 5 Cir. 3/13/13), 113 So.3d 261, 266. However, the WCJ also noted several circumstances that corroborated Ms. Weaver's testimony. Specifically, the WCJ cited medical records stating that Ms. Weaver could work only with restrictions; as late as November 11, 2013, Ms. Weaver still had pain with movement of her wrist and decreased strength in her wrist; and as of May 9,

6

2013, Ms. Weaver had continuing pain in her wrist and there was a palpable click when Ms. Weaver moved her wrist. Since Ms. Weaver's testimony was not the only evidence considered by the WCJ, the court's reasoning in *Wilson* is inapplicable to this case. Moreover, the claimant in *Wilson* was released to full duty without restrictions, where Ms. Weaver was released with restrictions and with instructions not to use the injured portion of her right hand. There was sufficient evidence to support the WCJ's finding that Ms. Weaver was entitled to SEB.

### Job Availability

Once Ms. Weaver had proved entitlement to SEB, the burden shifted to Appellants to defeat Ms. Weaver's claim. In order to defeat an employee's claim for SEB, an employer must show:

> (1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;
>
> (2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and
>
> (3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.

*Banks*, 696 So.2d at 557. Appellants contend here, as they did before the WCJ, that a suitable job existed since Ms. Weaver was offered and accepted her previous job after her accident. But as previously discussed, the WCJ reasonably found that Ms. Weaver was unable to perform the job she had before her injury. That job was, therefore, not within the "claimant's physical capabilities" as required by *Banks*. *Id.* There is no evidence that there was another job available to Ms.

7

Weaver that met the requirements laid out in *Banks*: Appellants did not present expert testimony or any other evidence that such a job existed. *Cf. Daigle*, 545 So.2d 1005 (employer offered expert testimony to establish existence of suitable jobs with a similar salary and within a reasonable geographic area). Appellants did not meet their burden of proof, and the WCJ did not err in awarding Ms. Weaver SEB.

## Penalties and Attorney Fees

Ms. Weaver asserts on appeal that while the WCJ correctly awarded her SEB, he erred in failing to award her penalties and attorney fees because Appellants acted arbitrarily and capriciously in failing to timely pay Ms. Weaver's benefits. Medical benefits must be paid within 60 days of when the employer or insurer receives notice. La.R.S. 23:1201(E)(1). Failure to pay benefits in a timely manner requires the imposition of penalties and attorney fees on the employer or insurer, unless that party reasonably controverts the employee's claim. La.R.S. 23:1201(F). The question is, therefore, not whether the employer acted arbitrarily and capriciously, but whether the employer presented "sufficient factual and medical information to reasonably counter the evidence provided by the claimant." *Mouton v. Walgreen Co.*, 07-1403, p. 14 (La.App. 3 Cir. 4/2/08), 981 So.2d 75, 85 (citing *Humphrey v. Icee Distribs.*, 06-549 (La.App. 3 Cir. 11/29/06), 944 So.2d 783, *writ denied*, 07-7 (La. 3/9/07), 949 So.2d 442). An award or denial of penalties and attorney fees is reviewed for manifest error. *Id.*

Here, LWD controverted Ms. Weaver's claim with the theory that Ms. Weaver was able to continue working at her pre-injury job. While we ultimately find that the evidence presented by Ms. Weaver established a valid claim for SEB,

Appellants' case was not unsupported by facts and evidence. Appellants pointed out that Ms. Weaver continued working at LWD for four months after injury, seemingly without incident. Appellants also presented testimony from another LWD employee that, at least until Ms. Weaver's last day of work, LWD modified Ms. Weaver's job to accommodate her restrictions. That employee also testified that Ms. Weaver simply left employment without reason. LWD reasonably controverted Ms. Weaver's claim. As a result, we find that the WCJ did not manifestly err by denying Ms. Weaver penalties and attorney fees.

## IV.

## <u>CONCLUSION</u>

The judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellants, Louisiana Wholesale Drug Company, Inc., and Continental Casualty Company.

**AFFIRMED.**

# STATE OF LOUISIANA

## THIRD CIRCUIT COURT OF APPEALS

### WCA 15-747

VANESSA WEAVER

VERSUS

**LOUISIANA WHOLESALE DRUG CO., INC., ET. AL.**

**Savoie, J., dissents and assigns reasons:**

I disagree with the majority's decision to affirm. In my view, Ms. Weaver failed to satisfy her burden of proving entitlement to supplemental earnings benefits (SEBs), which has been set forth as follows:

> An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. 'In determining if an injured employee has made out a prima facie case of entitlement to [SEBs], the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage.' It is only when the employee overcomes this initial step that the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employee's community or reasonable geographic location.
>
> . . . . 'In determining whether a [WCJ's] finding that an employee has met his initial burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine *all* evidence that bears upon the employee's inability to earn 90% or more of his pre-injury wages.'
>
> . . . . [Louisiana Revised Statutes] 23:1221(3)(a) requires that a claimant prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of wages he was earning at the time of injury '***whether or not*** the same or similar occupation as that in which the employee was customarily engaged when injured.' (Emphasis added). The statute clearly places its focus on the amount of wages earned before and after the accident, not the type of occupation or the type of work performed. . . . .
>
> . . . .

Implicit in La.R.S. 23:1221(3)'s requirement that the employee show that a work-related injury resulted in his inability to earn 90% of his pre-injury wages is a showing that the injury, and not some other cause, resulted in his inability to retain his pre-injury job. Where the employee goes back to his pre-injury job and then is terminated for a reason beyond the employer's control and totally unrelated to the injury, this strongly suggests that his inability to earn 90% of his pre-injury wages was not the result of his injury and that the employee is in fact able to earn 90% of his pre-injury wages in some capacity.

*Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793, pp. 4-9 (La. 1/9/11), 174-176 (citations omitted) (additional emphasis underlined).

The WCJ's determination that Ms. Weaver met her burden of proof entitling her to SEBs was based on the following factual findings provided in its written reasons:

> The Court heard the testimony of Ms. Weaver. She testified on July 12, 2013, a pallet with cases of medicine was left behind from the day before. She testified that Troy Meche and James Savoy told her it was her responsibility to pick up the medicine and save [i.e. re-shelve] it. She then told them she could not pick up the boxes due to her restrictions. Ms. Weaver testified that the boxes weighed 15 to 20 pounds. Ms. Weaver refused to lift the boxes and left the employer's premises.
>
> She testified that the job before her injury she cannot do unless it is modified. She testified that she felt like she was exceeding her restrictions the way she worked. Ms. Weaver additionally testified that she has numbness and tingling and her hand swells with activity.
>
> In assessing the testimony of Ms. Weaver, the Court observed Ms. Weaver's gestures, tone of voice, responses and reactions to questions, and her overall demeanor. The Court makes the specific finding that Ms. Weaver's testimony was credible.

While the trial court made factual and credibility determinations based on Ms. Weaver's testimony, in my view, these facts are insufficient to prove that Ms. Weaver's injury resulted in an *inability to earn* ninety percent of her pre-injury wages.

The undisputed testimony at trial was that Ms. Weaver returned to work at LWD the next business day following her injury and worked for three and one-half months before leaving her job. Ms. Weaver testified that her job duties included

2

stocking shelves with medications that were in boxes varying in weight from one pound to between fifteen and twenty pounds. She admitted that there were always male employees to assist her with lifting heavy boxes if she asked, both before and after her injury. She testified that after her injury, she always wore a splint and that LWD always accommodated her. There was no evidence suggesting that Ms. Weaver's job performance was inadequate following her injury.

It was also undisputed that, during the three and one-half months Ms. Weaver worked post-injury, LWD never reduced the amount of wages it paid to her. Instead, Ms. Weaver simply stopped receiving ninety percent of her pre-injury wage when she did not return to LWD after July 12, 2013. While the parties disputed the events that led to Ms. Weaver leaving that day, there was no indication that any failure on the part of Ms. Weaver to shelve the boxes at issue resulted in termination of her job, or that LWD stopped paying her for reasons related to her injury. Instead, Ms. Weaver simply chose not to return to work following that date. She testified that after she left LWD, she did not seek any other employment and indicated that she would not return to work at LWD as long as she had to wear a splint.

Ms. Weaver's testimony that she could not perform her pre-injury job, without more, is insufficient to establish her burden of proving her *inability to earn* ninety percent of her pre-injury wage. *See Wilson v. Metro. Dev. Ctr.*, 12-487 (La.App. 5 Cir. 3/13/13), 113 So.3d 261. Just like the employee in *Wilson*, Ms. Weaver "did not present testimony or evidence from any doctor or other witness to establish that she could not work or that she could not earn at least ninety percent (90%) of her pre-injury wages." *Id.* at 267. While the majority distinguishes *Wilson*, suggesting that the medical evidence corroborates Ms. Weaver's testimony, I disagree. The medical records do not sufficiently establish that Ms.

3

Weaver was unable to work or was otherwise unable to earn ninety percent of pre-injury wage.

Dr. Basile's initial report following the accident indicated that Ms. Weaver could "return to work at once with restrictions," and the restrictions were listed as "do not use injured part of right hand." The undisputed evidence was that Ms. Weaver returned to work under these restrictions and that her wages were not reduced.

Ms. Weaver saw Susan Lafleur at Lafleur Therapy Center for physical therapy in April and May 2013. Ms. Lafleur's letter dated May 9, 2013, to Dr. Basile noted a "palpable click" in Ms. Weaver's wrist as well as Ms. Weaver's subjective pain score of "6 out of 10" at work, and further indicated that Ms. Weaver was ready for a neoprene wrist splint instead of a "rigid splint." However, the reports from Lafleur Therapy Center provide no opinion as to whether Ms. Weaver could work, with or without restrictions, or whether Ms. Weaver could earn ninety percent of her pre-injury wage.

On the other hand, Dr. Basile's report dated May 14, 2013, indicated that Ms. Weaver could "return to work at once with restrictions," and the restrictions were listed as "wear Neoprene wrist splint at work." The report further stated "normal activity" and noted that Ms. Weaver was discharged to work on May 14, 2013. Ms. Weaver continued to work at LWD after this date and her wages were not reduced. Ms. Weaver further admitted that Dr. Basile never told her she could not work. There are no other medical records in evidence after this date suggesting that Ms. Weaver could not work as a result of her wrist injury, but rather only a report dated November 11, 2013 (after Ms. Weaver left LWD) reflecting complaints of pain and swelling in her wrist. The additional medical records in evidence through October 7, 2014 do not reflect any further complaints regarding Ms. Weaver's wrist injury.

4

Ms. Weaver also testified that, prior to working at LWD, she had worked as a dispatcher for the Arnaudville Police Department, and, in connection therewith, she answered phones and typed. In addition, she had worked for several years as an assistant manager for Dollar General, which included overseeing other staff, opening and closing the store, and making bank deposits. While Ms. Weaver testified that these jobs required the use of both hands, she did not submit any evidence that she could not perform similar jobs while wearing a splint.

Rather than presenting evidence that her injury prevented her from earning ninety percent of her pre-injury wage, Ms. Weaver testified that, after leaving LWD, she never tried to obtain any other job, despite Dr. Basile's indication that she could return to work with a wrist splint. She further testified that she would not return to a modified position at LWD at all as long as she was wearing a splint. This is insufficient to establish Ms. Weaver's burden of proving that her work-injury prevented her from earning ninety percent of her pre-injury wages, and I would reverse the trial court's ruling.