SAVOIE, J.,
dissents and assigns reasons.
hi disagree with the'majority’s decision to affirm. In my view, Ms. Weaver failed' to satisfy her burden of proving entitlement to supplemental earnings benefits (SEBs), which has been set forth as follows:
An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the in-' jury resulted in his inability to earn that amount under the facts and circumstances of the individual case. ‘In determining if an injured employee has made out a prima facie case of entitlement to [SEBs], the trial court may and should take into account all those factors which might bear on an employee’s ability to earn a wage.’ It is only when the employee overcomes this initial step that the burden shifts to the employer to prove; by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employee’s community or reasonable geographic location.
.... ‘In determining whether a [WCJ’s] finding that an 'employee has met his initial burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine all evidence that bears upon the employee’s inability to earn 90% or more of his pre-injury wages.’
_ [Louisiana Revised Statutes] 2S:1221(3)(a) requires that a claimant prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of wages he was earning at the time of injury ‘whether or not the same or similar occupation as that in which the employee was customarily engaged when injured.’ (Emphasis added). The statute clearly places its focus on .the amount of wages earned before and after the accident, not the type of occupation or the type of work performed. —
[[Image here]]
liJmpIicit in La.R.S. 23:1221(3)’s requirement that the employee show that a work-related injury resulted in his inability to earn 90% of his pre-injury wages is a showing that the injury, and not some other cause, resulted in his inability to retain his pre-injury job. Where the employee goes back to his pre-injury job and then is terminated for a reason beyond the employer’s control and totally unrelated to the injury, this strongly suggests that his inability to earn 90% of his pre-injury wages was not the result of his injury and that the employee is in fact able to earn 90% of his pre-injury wages in some capacity.
Poissenot v. St. Bernard Parish Sheriff’s Office, 09-2793, pp. 4-9 (La.1/9/11), 56 *373 So.3d 170, 174-176 (citations omitted) (additional emphasis underlined).
The WCJ’s determination that> Ms. Weaver met her burden of proof entitling her to SEBs was based on the following factual findings provided in its written reasons:
The Court heard the testimony of Ms. Weaver. She testified on July 12, 2013, a pallet with cases of medicine was left behind from the day before. She testified that Troy Meche and James Savoy told her it was her responsibility to pick up the medicine and save [i.e. re-shelve] it. She then told them she could not pick up the boxes due to her restrictions. Ms. Weaver testified that the boxes weighed 15 to 20 pounds. Ms. Weaver refused to lift the boxes and left the employer’s premises.
She testified that the job before her injury she cannot do unless it is modified. She testified that she felt like she was exceeding her restrictions the’ way she worked. Ms, Weaver additionally testified that she has numbness and tingling and her hand swells with activity.
In assessing the testimony of Ms. Weaver, the Court observed Ms. Weaver’s gestures, tone of voice, responses and reactions to questions, and her overall demeanor. The Court makes the specific finding that Ms. Weaver’s testimony was credible.
"While the trial court made factual and credibility determinations based on Ms. Weaver’s testimony, in my view, these facts are insufficient to prove that Ms. Weaver’s injury resulted in an inability to earn ninety percent of her pre-injury wages.
The undisputed testimony at trial was that Ms. Weaver returned to work at LWD the next business day following her injury and worked for three and one-half months before leaving her job. Ms. Weaver testified that'her job duties included | ¿¡stocking shelves with medications that were ⅛'boxes varying in weight from one pound to between fifteen and twenty pounds. She admitted that there • were always' male employees to assist her with lifting heavy boxes if she asked, both before and after her injury. She testified that after her injury, she always wore a splint and-that LWD always accommodated her. There was no evidence suggesting that Ms. Weaver’s job performance was inadequate following her injury.
It was also’undisputed that, during the three and one-half months Ms. Weaver worked post-injury, LWD never reduced the amount of wages it paid to her. Instead, Ms. Weaver simply stopped receiving ninety percent-of her pre-injury wage when she did not return to LWD after July 12, 2013. While the parties disputed the events that led- to Ms. Weaver leaving that day, there was no indication that any failure on the part of Ms. Weaver to shelve the boxes at issue resulted in termination of her job, or that LWD stopped paying her for reasons related to her injury. Instead, Ms. Weaver simply chose not to return to work following that date. She testified that after she left LWD, she did not.seek any other employment and indicated that she would not return to work at LWD as long as she had to wear a splint.
Ms. Weaver’s testimony that she could not perform her pré-injury job, without more, is insufficient5'to establish her burden of proving her inability to earn ninety percent of her pre-injury wage. See Wilson v. Metro. Dev. Ctr., 12-487 (La.App. 5 Cir. 3/13/13), 113 So.3d 261.: :Just like the employee in Wilson, Ms. Weaver “did not present testimony or evidence from any doctor or other witness to establish that she could not work or that she could not earn at least ninety percent (90%) of her pre-injury wages.” Id. at 267. While the *374 majority distinguishes Wilson, suggesting that the medical evidence corroborates Ms. Weaver’s testimony, I disagree. The medical records do not sufficiently establish that Ms. |4Weaver was unable to work or was otherwise unable to earn ninety percent of pre-injury wage.
Dr. Basile’s initial report following the accident indicated that Ms. Weaver- could “return to work at once with restrictions,” and the restrictions were listed as “do not use injured part of right hand.” The undisputed evidence was that Ms. Weaver returned to work under these restrictions and that her wages were not reduced.
. Ms. Weaver saw Susan Lafleur at " La-fleur Therapy Center for physical therapy in April and May 2013. Ms. Lafleur’s letter dated May 9, 2013, to Dr. Basile noted a “palpable click” in Ms. Weaver’s wrist as well as Ms. Weaver’s subjective pain score of “6 out of 10” at work, and further indicated - that Ms. Weaver was ready for a neoprene wrist splint instead of a “rigid splint.” However, the. reports from Lafleur Therapy Center provide no opinion as to whether Ms. Weaver could work, ■ with or. without restrictions, or whether Ms. Weaver could earn ninety percent of her pre-injury wage.,
On-the other hand, Dr. Basile’s report dated May 14, 2013, indicated that Ms. Weaver could “return to work at once with restrictions,” and the restrictions were listed as “wear Neoprene wrist splint at work.” The report further stated “normal activity” and noted that Ms. Weaver was discharged to work on May 14, 2013. Ms. Weaver continued to work at LWD after this date and her wages were not reduced. Ms. Weaver further admitted that Dr. Ba-sile never told her she could not work. There are no other medical records in evidence after this date suggesting that Ms. Weaver could not, work as a result of her wrist injury, but rather only a report dated November 11, 2013 (after Ms. Weaver left LWD) reflecting complaints of pain and swelling in her wrist.. The additional medical records .in evidence through October 7, 2014 do not reflect any further complaints regarding Ms. Weaver’s wrist injury.
lfiMs. Weaver also testified that, prior to working at LWD, she had worked as a dispatcher for the Arnaudville Police Department, . and, iii connection therewith, she answered phones and typed. In addition, she had worked for several years as an assistant manager for Dollar General, which included overseeing other staff, opening and closing the store, and making bank deposits. While Ms. Weaver testified that these jobs required the use of both hands, she did not submit any evidence that she could not perform similar jobs while wearing a splint.
Rather than-presenting evidence that her injury prevented her from earning ninety percent of her pre-injury wage, Ms. Weaver testified that, after leaving LWD, she never tried to obtain any other job, despite Dr. Basile’s indication that she could return to work with a wrist splint. She further testified that she would- not return to a modified position at LWD at all as long as she was wearing a splint. This is insufficient to establish Ms. Weaver’s burden' of proving that her work-injury prevented her from earning ninety percent of her pre-injury wages, and I would reverse.the trial court’s ruling.